TERRY, Associate Judge:
 

 This case arose from an accident which killed seven persons and injured two more.
 
 *710
 
 All of the victims were struck by an automobile while standing at a bus stop at Third and M Streets, S.E. The injured parties and representatives of the deceased victims filed negligence actions against the driver of the car, the owner of the car (the driver’s brother), and the Washington Metropolitan Area Transit Authority (WMA-TA). The District of Columbia was later added as a co-defendant. Included in one complaint was a claim by a relative of two of the victims for negligent infliction of emotional distress. The claims were eventually consolidated in an amended complaint, and after extensive discovery and the filing of several motions, the trial court granted WMATA’s and the District’s motions ■ for summary judgment. The court then granted a motion for entry of judgment under Super.Ct.Civ.R. 54(b), thereby making its order appealable,
 
 [1]
 
 and stayed the proceedings with respect to the other defendants pending the outcome of this appeal by all of the plaintiffs. Appellants contend that the court erred in ruling (1) that WMATA and the District were immune from tort liability for their injuries, (2) that the driver of the car was an unforeseeable intervening cause of the accident, and (3) that no recovery could be had for emotional distress against WMATA and the District. We reject all their arguments and affirm the trial court’s judgment.
 

 I. Factual Baokground
 

 The pertinent facts are undisputed. At about 6:15 p.m. on August 25, 1984, Robert Lee Williams, while under the influence of alcohol and drugs, was driving a car in the 200 block of M Street, S.E. At that point M Street is a six-lane thoroughfare with a concrete median strip, approximately six inches high and four feet wide, separating the eastbound lanes from the westbound lanes. Williams, driving at more than twice the posted speed limit, was on the wrong side of the street, headed eastward into westbound traffic. Trying to steer into the proper lane through a gap in the median, Williams hit the median instead. The car lurched out of control, crossed over to the far curb, and struck nine persons waiting at a bus stop at the corner of Third and M.
 

 Of the nine, only Charron McKethean and Willie Calliham, Jr., survived. The others — Theodore and Sandra Chrisp and their three children, Charron McKethean’s six-month-old daughter Charquita, and Linda Taylor — were all killed. John McKethean, Charron’s father, was at his home a block away when he heard the crash and ensuing screams. He ran to the bus stop and saw his severely injured daughter and the body of his granddaughter. He also saw the bodies of the other victims, all of whom he knew. Criminal charges were brought against Williams, and eventually he pleaded guilty to two counts of manslaughter while armed, five counts of manslaughter, and driving while intoxicated. The consecutive sentences he received on those convictions were affirmed by this court in
 
 Williams v. United States,
 
 569 A.2d 97 (D.C.1989).
 

 The bus stop at Third and M Streets had been established in 1952 by the Capital Transit Company, a predecessor of WMA-TA, under an administrative order of the District of Columbia Public Utilities Commission. Originally the stop was located on a seven-foot-wide grassy strip between the curb and the sidewalk, owned by the District of Columbia. On the other edge of the sidewalk stands a brick wall belonging to the federal government, behind which lies the Washington Navy Yard. In 1967 M Street was widened to three lanes in each direction, and the grassy section was removed, leaving only four to six feet of sidewalk between the curb and the brick wall. There has been no change since. Prospective passengers now must either stand on the sidewalk or lean against the brick wall while waiting for the bus.
 

 Appellants filed suit against Robert Williams, his brother Bernard, who owned the ear, WMATA, and the District of Co
 
 *711
 
 lumbia. Their complaint alleged that WMATA and the District were jointly and severally liable for the deaths and injuries because they were responsible for the location and maintenance of the bus stop and had negligently failed to follow applicable safety standards in placing it at Third and M Streets and in allowing it to remain there after the street was widened. This negligence allegedly was a proximate cause of their injuries, since the 1967 street widening had made the bus stop a hazard, leaving it too close to a busy street with no way for persons waiting there for a bus to escape oncoming traffic. Appellants also alleged that the District’s negligent maintenance of the median strip was a proximate cause of their injuries. Finally, appellant John McKethean sought recovery from all the defendants for negligent infliction of emotional distress, claiming that witnessing the deaths and injuries of his family and friends caused him severe and continuing emotional injury.
 

 Following discovery, each of the parties moved for either partial or total summary judgment. The court granted WMATA’s and the District’s motions as to all of appellants’ claims. The court said first that it could not determine from the record whether WMATA, the District, or both bore any actual responsibility for the accident. This did not matter, however, for the court went on to hold that both were immune from liability. The court reasoned that neither could be liable for the original placement of the bus stop because it was located in compliance with an administrative order. With respect to any decision about relocation or redesign of the stop after the 1967 street widening, the court ruled that the District was immune from liability because its actions were committed in the exercise of a discretionary function. Similarly, WMATA was immune from liability because its actions were governmental in nature.
 

 As to the allegedly negligent maintenance of the median, the court ruled that Williams’ criminal conduct was an unforeseeable intervening cause of the accident which absolved the District of liability. Finally, the court held that WMATA and the District were not liable for infliction of emotional distress since neither appellee’s conduct was sufficiently extreme or outrageous to allow for recovery absent physical injury, although Williams’ conduct could be so characterized. Consequently, in its order the court granted WMATA’s and the District’s motions for summary judgment as to all claims, but denied the motion of Robert and Bernard Williams for summary judgment on John McKethean’s claim.
 
 [2]
 

 II. WMATA
 

 Appellants do not here argue that either WMATA or the District is liable for the original decision to locate the bus stop at the corner of Third and M Streets. Rather, they claim that the 1967 widening of M Street made the bus stop a safety hazard, and that appellees’ alleged negligence was their failure to remedy the hazard. Appellants first contend that WMATA, as a common carrier, owes a duty of reasonable care to prospective passengers of its transit system. WMATA breached this duty, they say, by ignoring its own safety standards and allowing the continued existence of a dangerous bus stop. According to appellants, immunity should not attach to these breaches as a matter of public policy. More specifically, appellants maintain that WMATA is statutorily liable because the relocation and maintenance of its stops are proprietary activities. Thus, they argue, the trial court erred in ruling that WMATA was immune from suit.
 

 WMATA responds that, under District of Columbia law, it owes no duty of care to prospective passengers on its transit system. Further, even if it did owe such a duty and breached it, the trial court correctly ruled that it was immune from suit because its alleged acts of negligence were governmental, not proprietary. We agree with both of WMATA's arguments.
 

 
 *712
 
 A.
 
 Duty of Care
 

 We reject appellants’ contention that WMATA owed a special duty of care to the victims of the accident, who were prospective passengers on its transit system. WMATA, like any common carrier, owes a duty of reasonable care to its passengers.
 
 D.C. Transit System, Inc. v. Carney,
 
 254 A.2d 402, 403 (D.C.1969); Restatement (Second) of Torts § 314A (1965);
 
 see
 
 Standardized Civil Jury Instructions for the District of Columbia, No. 8.1 (1981). This duty arises, however, only in a carrier-passenger relationship. A common carrier has no special duty to non-passengers.
 
 See
 
 Restatement,
 
 supra,
 
 § 314A comment c; Standardized Civil Jury Instructions,
 
 supra,
 
 No. 8.2 (carrier’s duty “begins when the intending passenger makes his first contact with the bus in the act of entering it”). More than twenty years ago, in a case in which the plaintiff was injured when she fell at a bus stop while waiting for a bus, this court affirmed a judgment n.o.v. in favor of the bus company. We held:
 

 [Ujntil a person has placed himself in some substantial sense in the custody or under the control of the carrier, he is not a passenger and no special duty of care is owed him. An intent to become a passenger is not enough to confer that status or to charge the carrier with the duty to exercise that degree of care owed by a carrier in the transportation of a passenger.
 

 Baker v. D.C. Transit System, Inc.,
 
 248 A.2d 829, 831 (D.C.1969) (citations omitted). A duty of care may also arise if the property upon which an individual stands when injured is either owned by or under the control of the carrier.
 
 See Webster v. Capital Transit Co.,
 
 91 U.S.App.D.C. 303, 304, 200 F.2d 134, 135 (1952) (carrier had “no obligation growing out of ownership or control” because the platform where plaintiff was injured was neither its property nor under its control);
 
 cf. Chvala v. D.C. Transit System, Inc.,
 
 113 U.S.App.D.C. 171, 306 F.2d 778 (1962) (automobile struck streetcar loading platform which carrier had statutory duty to “maintain, mark, and light”; directed verdict for carrier reversed).
 

 In the instant case, none of the victims of the accident was boarding or leaving a WMATA bus. Rather, they were all waiting on the sidewalk, which was owned not by WMATA but by the District of Columbia. Thus WMATA owed no duty to the victims other than a general duty to exercise ordinary care in the operation of its buses so as to avoid injuring the citizenry. 18 E. MoQuillin, Municipal Corporations § 53.108 (3d ed.1984);
 
 see
 
 Standardized Civil Jury Instructions,
 
 supra,
 
 No. 8.10 (common carrier has no responsibility to maintain or repair public space at a bus stop). Since no WMATA vehicle or property was involved in this case, we conclude that
 
 Baker v. D. C. Transit
 
 is controlling on the issue of WMATA’s duty. We hold accordingly that WMATA owed the victims no duty of care because they were not its passengers at the time they were injured.
 

 B.
 
 Immunity
 

 The trial court ruled that WMA-TA was immune from suit under section 80 of the WMATA Compact, D.C.Code § 1-2431(80) (1987).
 
 [3]
 
 We agree. Even assuming that WMATA owed a duty of care which it breached, the court was correct in holding WMATA immune from suit for its alleged acts of negligence.
 

 Section 80 establishes a governmental-proprietary test for deciding which of WMATA’s activities may subject it to tort liability.
 
 Hall v. WMATA,
 
 468 A.2d 970, 972 (D.C.1983);
 
 see Dant v. District of Columbia,
 
 264 U.S.App.D.C. 284, 289-290, 829 F.2d 69, 74-75 (1987). Whether an activity is proprietary or governmental is a question of federal law because the WMA-TA Compact is an Act of Congress.
 
 Sand
 
 
 *713
 

 ers v. WMATA,
 
 260 U.S.App.D.C. 359, 362, 819 F.2d 1151, 1154 (1987);
 
 Morris v. WMATA,
 
 251 U.S.App.D.C. 42, 44, 781 F.2d 218, 220 (1986). In deciding the category in which to place WMATA’s allegedly negligent acts, the trial court adopted the approach suggested by McQuillin, namely, that “ ‘[t]he underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit.’ ” 18 E. McQuillin,
 
 supra,
 
 § 53.29, quoting
 
 Bolster v. Lawrence,
 
 225 Mass. 387, 390, 114 N.E. 722, 724 (1917);
 
 accord, Nathan v. WMATA,
 
 653 F.Supp. 247, 248 (D.D.C.1986) (governmental functions are those which are for the benefit of the general public).
 

 Appellants argue that this “common good” test is overly broad and would render section 80 superfluous, since all of WMATA’s activities are essentially oriented to serving the public. Appellants are certainly correct that, in many instances, the “common good” test is of little help, for proprietary activities may benefit the public as well as the agency performing them.
 
 See Johnson v. Detroit Metropolitan Airport,
 
 133 Mich.App. 603, 606, 350 N.W.2d 295, 297 (1984) (noting that an earlier case “repudiates by implication the ‘common good of all’ test”). We agree with the District of Columbia Circuit that the more appropriate inquiry is whether a particular activity involves a legislative, administrative, or regulatory policy decision or merely implements such a decision. Only the former type of action, a policy decision, is a “discretionary function” which should be immune from second-guessing by a jury.
 
 Sanders, supra,
 
 260 U.S.App.D.C. at 362-364, 819 F.2d at 1154-1155;
 
 see Berkovitz ex rel. Berkovitz v. United States,
 
 486 U.S. 531, 538-539, 108 S.Ct. 1954, 1959-1960, 100 L.Ed.2d 531 (1988);
 
 Dalehite v. United States,
 
 346 U.S. 15, 35-36, 73 S.Ct. 956, 967-968, 97 L.Ed. 1427 (1953);
 
 Dant, supra,
 
 264 U.S.App.D.C. at 288-290, 829 F.2d at 73-75;
 
 Urow v. District of Columbia,
 
 114 U.S.App.D.C. 350, 351-352, 316 F.2d 351, 352-353,
 
 cert. denied,
 
 375 U.S. 826, 84 S.Ct. 69, 11 L.Ed.2d 59 (1963).
 

 In the instant case, then, the issue of WMATA’s immunity comes down to a question of whether its alleged acts of negligence are characterized as discretionary decisions or ministerial execution of those decisions.
 
 [4]
 
 Appellants assert, of course, that WMATA’s acts ánd omissions fall in the latter category. They cite WMATA’s policy of ensuring passenger safety, set forth in its System Safety Program Plan (SSPP) and related documents, as proof that WMATA’s discretion is limited by established standards. They also claim that WMATA failed to follow its own standards by maintaining a hazardous bus stop and failed to train its staff properly in implementing these safety standards. But the gist of appellants’ complaint is really that WMATA was negligent in not relocating the bus stop to a safer place after 1967. Assuming that relocation was even the responsibility of WMATA,
 
 [5]
 
 appellants’ claims relate more to design, a discretionary function, than to implementation.
 

 While the provision of mass transportation by WMATA is itself a proprietary activity,
 
 Qasim v. WMATA,
 
 455 A.2d 904, 906 (D.C.) (en banc),
 
 cert. denied,
 
 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983), we
 
 *714
 
 hold that the design and planning of a transportation system are governmental activities because they involve quasi-legislative policy decisions which are discretionary in nature and should not be second-guessed by a jury.
 
 See, e.g., Dant, supra,
 
 264 U.S.App.D.C. at 289-290, 829 F.2d at 74-75 (design of fare collection system);
 
 Sanders, supra,
 
 260 U.S.App.D.C. at 364, 819 F.2d at 1156 (drug testing of all WMATA employees involved in accidents);
 
 Nathan, supra,
 
 653 F.Supp. at 248 (design of stairwell in subway station);
 
 see also Urow, supra,
 
 114 U.S.App.D.C. at 351, 316 F.2d at 352 (placement of traffic control device);
 
 Freeman v. City of Norfolk,
 
 221 Va. 57, 60, 266 S.E.2d 885, 886 (1980) (decision to install or not to install traffic lights, roadway markings, guardrails, and like devices on public streets).
 
 But see Gillot v. WMATA,
 
 507 F.Supp. 454, 457 (D.D.C.1981) (failure to make WMATA-owned parking lot safe by taking certain security measures is actionable negligence). Only the negligent operation of such a system or the negligent implementation of such a design may be characterized as proprietary.
 
 See, e.g., Dant, supra,
 
 264 U.S.App.D.C. at 290, 829 F.2d at 75;
 
 [6]
 

 Heffez v. WMATA,
 
 569 F.Supp. 1551, 1553 (D.D.C.1983) (WMATA employee was “carrying out a proprietary function, to wit, managing the Van Ness subway station”),
 
 aff'd without opinion,
 
 252 U.S.App.D.C. 18, 786 F.2d 431 (1986).
 

 A decision to relocate or not to relocate the bus stop after 1967 would involve safety planning, not implementation or operation of a safety plan.
 
 See
 
 18 E. McQuil-lin,
 
 supra,
 
 § 53.41 (failure to reconstruct or upgrade is planning, a governmental function). Indeed, the allegedly hazardous condition of the stop itself arose from a traffic control plan, the District’s decision to widen M Street. Appellants do not allege that WMATA, in implementing its safety policy, engaged in any negligent acts which created the dangerous condition, nor do they claim that WMATA allowed the bus stop to deteriorate. Despite the existence of a general safety policy and the broad statements in the SSPP, the record contains no specific safety guidelines which would implement the policy and limit WMATA’s discretion in choosing to relocate a bus stop.
 
 Compare Berkovitz, supra,
 
 486 U.S. at 536, 542-548, 108 S.Ct. at 1958, 1961-1965 (decision to license vaccine not discretionary when statutory and regulatory standards prescribe course of action which agency must follow in making its decision).
 

 In trying to bring their claims under the proprietary or ministerial umbrella, appellants are really seeking to establish as affirmative negligence what is essentially passive conduct: WMATA's failure to take or enforce safety precautions. Without more specific evidence in the record of either safety requirements or an actual omission of an identifiable duty, we see no basis for finding WMATA liable. Were we to hold otherwise, a jury would be forced to speculate on whether adoption of precautionary measures by WMATA might have prevented the accident. The impossibility of such speculation is one of the main reasons why policy decisions receive immunity in the first place.
 

 We therefore hold that, even if WMATA owed a duty to the persons waiting at the bus stop who were injured as a result of Mr. Williams’ conduct, it cannot be held liable for their injuries because the design and placement of the bus stop are governmental functions immune from tort liability under section 80 of the WMATA Compact.
 

 III. The DistriCt of Columbia
 

 A.
 
 Immunity
 

 Appellants argue that the District was jointly negligent with WMATA in cre
 
 *715
 
 ating the hazardous bus stop after the 1967 widening of M Street since the District makes the final decision in locating bus stops. Appellants contend that such a decision is ministerial, not discretionary, so that the trial court erred in ruling that the District was immune from suit. The District responds that its decision was discretionary, and hence that the court properly upheld its claim of immunity. The District is right.
 

 To determine whether the District has waived its sovereign immunity so as to make it liable in tort in a given situation, this court applies the discretionary-ministerial test. “Under this standard the District is immune from suit only if the act complained of was committed in the exercise of a discretionary function; if committed in the exercise of a ministerial function, the District must respond.”
 
 Wade v. District of Columbia, supra
 
 note 4, 310 A.2d at 860;
 
 accord, District of Columbia v. Pace,
 
 498 A.2d 226, 228 (D.C.1985);
 
 Rustin v. District of Columbia,
 
 491 A.2d 496, 500 (D.C.),
 
 cert. denied,
 
 474 U.S. 946, 106 S.Ct. 343, 88 L.Ed.2d 290 (1985). Characterizing an act as discretionary or ministerial is not always an easy task.
 
 Harris v. District of Columbia,
 
 256 U.S. 650, 652, 41 S.Ct. 610, 610, 65 L.Ed. 1146 (1921). Nevertheless, courts faced with that task “generally define ‘discretionary’ acts as those involved in the formulation of policy, while ‘ministerial’ acts are defined as those related to the execution of policy.”
 
 Rieser v. District of Columbia,
 
 183 U.S.App.D.C. 375, 388, 563 F.2d 462, 475 (1977),
 
 vacated,
 
 183 U.S.App.D.C. 395, 563 F.2d 482,
 
 reinstated in pertinent part,
 
 188 U.S.App.D.C. 384, 393, 580 F.2d 647, 656 (1978) (en banc);
 
 District of Columbia v. Pace, supra,
 
 498 A.2d at 229;
 
 Elgin v. District of Columbia, supra
 
 note 4, 119 U.S.App.D.C. at 118-119, 337 F.2d at 154-155;
 
 see Gray v. Bell,
 
 229 U.S.App.D.C. 176, 199, 712 F.2d 490, 513 (1983),
 
 cert. denied,
 
 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984).
 

 Discretionary acts include administrative decisions “establishing plans, specifications, or schedules of operations.”
 
 Dalehite v. United States, supra,
 
 346 U.S. at 36, 73 S.Ct. at 968. Such decisions usually have a broad public effect and call for a delicate balancing of competing considerations.”
 
 Owen v. City of Independence,
 
 445 U.S. 622, 648, 100 S.Ct. 1398, 1414, 63 L.Ed.2d 673 (1980). As the Supreme Court has stated, “Where there is room for policy judgment and decision, there is discretion.”
 
 Dalehite, supra,
 
 346 U.S. at 36, 73 S.Ct. at 968;
 
 accord, Berkovitz, supra,
 
 486 U.S. at 537, 108 S.Ct. at 1959;
 
 see Pace, supra,
 
 498 A.2d at 229. We hold that, under these standards, the trial court correctly sustained the District’s claim of immunity.
 

 The District is immune in this case for essentially the same reason that WMATA is immune: the decision to relocate a bus stop following street improvement is part of overall traffic and safety design, a discretionary policy decision.
 
 See, e.g., District of Columbia v. Pace, supra
 
 (guardrail and exit ramp design);
 
 District of Columbia v. North Washington Neighbors, Inc.,
 
 367 A.2d 143, 148 n. 7 (D.C.1976),
 
 cert. denied,
 
 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977) (design of streets and control of traffic flow);
 
 Urow v. District of Columbia, supra
 
 (placement of traffic control devices). As the trial court observed, the decision to relocate one bus stop involves a balance of conflicting residential and neighborhood needs and may well have an impact on the entire area’s mass transit system. Appellants have not cited any statutes or regulations which would limit the discretion of the District in relocating bus stops.
 
 See Berkovitz, supra,
 
 486 U.S. at 536, 542-548, 108 S.Ct. at 1958, 1961-1965. They refer to certain WMATA documents outlining general safety policies to which the District professes to adhere, but they fail to identify any specific directives to implement those policies which might make relocation a ministerial action. A decision not to relocate the bus stop after 1967, moreover, would not be inherently unreasonable, given the seventeen intervening years without serious incident and the highly unusual nature of this particular accident.
 

 Repeating an argument they made with respect to their claim against WMATA, appellants characterize the District’s alleged
 
 *716
 
 negligent acts as mere implementation of policy,
 
 i.e.,
 
 negligent maintenance of the original bus stop. But the District committed no affirmative act of negligence, such as allowing the bus stop to deteriorate, which might give rise to liability.
 
 See, e.g., Wagshal v. District of Columbia,
 
 216 A.2d 172 (D.C.1966) (negligent failure to maintain a stop sign);
 
 Elgin v. District of Columbia, supra
 
 note 4 (failure to repair broken guardrail); W. Keeton, Prosser & Keeton on Torts § 131, at 1040 (5th ed. 1984).
 
 [7]
 
 Again, appellants erroneously try to transform a passive decision into an affirmative act of negligence.
 
 See Pace, supra,
 
 498 A.2d at 230-231. We will not circumvent the doctrine of sovereign immunity by calling ministerial what is essentially a discretionary function. We hold that the District is immune from liability because its role in the location of the bus stop was discretionary rather than ministerial.
 
 [8]
 

 B.
 
 Negligence
 

 Appellants also claim that, apart from its alleged negligence in maintaining a hazardous bus stop, the District is liable for the accident because it negligently failed to maintain the crumbling median separating the eastbound and westbound lanes of M Street. According to appellants, the defective median proximately caused the accident by launching the speeding car into the bus stop. The trial court correctly recognized that the District could be liable for improper maintenance of the median, but nevertheless granted summary judgment for the District on the ground that Williams’ criminal conduct was an unforeseeable intervening cause which severed the chain of causation between the defective median and the accident. Appellants now argue that the issue of causation should have been decided by the jury, not the court, because they presented evidence that Williams’ conduct was reasonably foreseeable. The District responds that, under District of Columbia law, criminal acts must be specifically foreseeable and that appellants’ evidence was insufficient to satisfy this heightened standard. We agree that Williams’ criminal conduct was an unforeseeable intervening cause, relieving the District of any liability it might otherwise have had for negligent maintenance of the median.
 

 Proximate cause has been defined as “that cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred.”
 
 S.S. Kresge Co. v. Kenney,
 
 66 App.D.C. 274, 275, 86 F.2d 651, 652 (1936), quoting
 
 Goodlander Mill Co. v. Standard Oil Co.,
 
 63 F. 400, 405 (7th Cir.1894);
 
 accord, e.g., St. Paul Fire & Marine Insurance Co. v. James G. Davis Construction Corp.,
 
 350 A.2d 751, 752 (D.C.1976). An intervening negligent or criminal act breaks the chain of causation if it is not reasonably foreseeable.
 
 Lacy v. District of Columbia,
 
 424 A.2d 317, 323 (D.C.1980);
 
 St. Paul Fire & Marine Insurance Co., supra,
 
 350 A.2d at 752.
 
 [9]
 
 Similarly, there is no proximate causation when the sequence of events leading to an injury is “ ‘highly extraordinary in retrospect.’ ”
 
 Lacy v. District of Columbia, supra,
 
 424 A.2d at 321 (citation omitted);
 
 accord, Morgan v. District of Columbia,
 
 468 A.2d 1306, 1318 (D.C.1983) (en banc).
 

 When an intervening act is criminal, this court demands a more heightened showing
 
 *717
 
 of foreseeability than if it were merely negligent. Because of “the extraordinary nature of criminal conduct, the law requires that the foreseeability of the risk be more precisely shown.”
 
 Lacy v. District of Columbia, supra,
 
 424 A.2d at 323. The defendant will be liable only if the criminal act is so foreseeable that a duty arises to guard against it.
 
 Cook v. Safeway Stores, Inc.,
 
 354 A.2d 507, 509-510 (D.C.1976);
 
 accord, Lacy v. District of Columbia, supra,
 
 424 A.2d at 323;
 
 see District of Columbia v. Doe,
 
 524 A.2d 30, 33 (D.C.1987) (plaintiff must show that defendant has “an increased awareness of the danger of a particular criminal act”);
 
 Boykin v. District of Columbia,
 
 484 A.2d 560, 565 (D.C.1984) (when injury was caused by intervening criminal act of third party, District may be liable for negligence only if “the danger of that act” was reasonably foreseeable);
 
 Romero v. National Rifle Ass’n,
 
 242 U.S.App.D.C. 55, 57-58, 749 F.2d 77, 79-80 (1984) (reading
 
 Lacy
 
 as suggesting that a specific crime, “rather than merely harm in general,” was foreseeable).
 

 Appellants argue that this heightened standard does not apply in this case because Williams’ crimes — manslaughter, manslaughter while armed, and driving while intoxicated — are all crimes of general intent. They contend that the special standard of
 
 Lacy
 
 and
 
 Cook
 
 is applicable only to specific intent crimes. This argument is utterly without legal support. In discussing intervening criminal conduct, this court has not differentiated between specific and general criminal intent.
 
 See, e.g., District of Columbia v. Doe, supra,
 
 524 A.2d at 33;
 
 Lacy v. District of Columbia, supra,
 
 424 A.2d at 323;
 
 Cook v. Safeway Stores, Inc., supra,
 
 354 A.2d at 509. The type of intent involved in a crime does not alter the fact that any kind of criminal conduct is deemed extraordinary; “under ordinary circumstances it may reasonably be assumed that no one will violate the criminal law.” Restatement (Second) of ToRTS § 302B comment d (1965).
 

 Appellants argue nevertheless that it is reasonably foreseeable that impaired or negligent drivers may leave the road and crash into bus stops. They presented evidence below that approximately fifty WMATA bus stops and ten bus shelters a year were struck by cars between 1977 and 1982,
 
 [10]
 
 and they note the high frequency of traffic accidents involving alcohol and drug abuse. We hold that this is not enough to make the District liable.
 

 While it is unfortunately true that drug abuse and drunk driving are major problems, in the District of Columbia as elsewhere,
 
 see Rong Yao Zhou v. Jennifer Mall Restaurant, Inc.,
 
 534 A.2d 1268, 1275 & n. 5 (D.C.1987);
 
 Bigbee v. Pacific Telephone & Telegraph Co.,
 
 34 Cal.3d 49, 58, 665 P.2d 947, 952, 192 Cal.Rptr. 857, 862 (1983), that fact alone does not meet the heightened standard of
 
 Lacy
 
 and
 
 Cook.
 
 At best, appellants have demonstrated that the location of the bus stop may have been hazardously close to a busy street. They have not shown that the District could have reasonably anticipated that the defective median would cause the accident in the precise manner in which it occurred— through the criminal conduct of an impaired driver speeding down the wrong lane of traffic. Nor have they shown that the median itself was a hazard, especially since it had served its intended purpose of channeling traffic for seventeen years without previous incident. The District, then, had no duty to protect against the unanticipated occurrence that resulted in death or injury to nine persons; there was no factor or combination of factors that gave the District an increased awareness of the danger of Williams’ criminal act.
 

 Thus the trial court did not err in holding that there were no facts or circumstances from which a jury could find proximate cause, and that appellants’ evidence was insufficient as a matter of law to send the issue of foreseeability to the jury.
 
 See Graham v. M & J Corp.,
 
 424 A.2d 103, 107 (D.C.1980) (“the question of proximate
 
 *718
 
 cause depends on whether the crime was foreseeable”). Because the sequence of events leading to the injury was not reasonably foreseeable and was “highly extraordinary in retrospect,”
 
 Lacy, supra,
 
 424 A.2d at 321, the District cannot be held liable for the injuries caused by Robert Williams.
 

 IV. Negligent Infliction of Emotional Distress
 

 Finally, we turn to the claim of John McKethean for negligent infliction of emotional distress.
 

 We held this case in abeyance pending the decision of the en banc court in
 
 Williams v. Baker,
 
 572 A.2d 1062 (D.C.1990). That decision completely disposes of Mr. McKethean’s claim. It is undisputed that he was at his home on L Street, at least a block away from the scene of the accident, when the Williams car plowed into the group of persons waiting at the bus stop. Because he was not within the zone of danger so as to fear for his own personal safety, he cannot recover for emotional distress.
 
 Id.
 
 at 1064. “[Tjhere can be no recovery for mental distress and its consequences resulting exclusively from observation of harm or danger to a third person.”
 
 Id.
 
 at 1069 (citations omitted). Since that is all that Mr. McKethean alleged, the trial court properly ruled against him on his claims against WMATA and the District.
 

 V. Conclusion
 

 For the foregoing reasons, we hold that the trial court did not err in granting summary judgment for both WMATA and the District of Columbia. That judgment is therefore
 

 Affirmed.
 

 [1]
 

 .
 
 See, e.g., Cohen v. Owens & Co.,
 
 464 A.2d 904 (D.C.1983);
 
 Dyhouse v. Baylor,
 
 455 A.2d 900 (D.C.1983).
 

 [2]
 

 . The Williamses did not seek summary judgment on the claims of the other plaintiffs.
 

 [3]
 

 . D.C.Code § 1-2431(80) states in relevant part:
 

 The Authority [WMATA] shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent[s] committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory ... but shall not be liable for any torts occurring in the performance of a governmental function.
 

 [4]
 

 . We recognize, as does the District of Columbia Circuit, that the governmental-proprietary test as set out in section 80 of the WMATA Compact is not necessarily congruent with the discretionary-ministerial test which we apply to tort claims against the District.
 
 See Wade v. District of Columbia,
 
 310 A.2d 857, 860 (D.C.1973) (en banc);
 
 Elgin v. District of Columbia,
 
 119 U.S.App.D.C. 116, 118, 337 F.2d 152, 154 (1964). But, like the Circuit, we note that "the ‘discretionary function’ standard is at least a subset of ‘governmental functions.’ ”
 
 Sanders, supra,
 
 260 U.S.App.D.C. at 363 n. 9, 819 F.2d at 1155 n. 9. Thus it is appropriate to speak of acts as "discretionary” or "ministerial," even when applying the governmental-proprietary test. In this case, in any event, the analysis under both tests is the same.
 

 [5]
 

 . Whether WMATA, the District, or both had legal responsibility for a decision to relocate the bus stop is uncertain. In their respective pleadings each attempted to place the responsibility on the other, but the trial court found the record too inadequate to determine the issue. After ruling that they were both immune from suit, the court dismissed their cross-claims as moot, and neither has appealed. Thus the issue of responsibility is not before us and need not be decided.
 

 [6]
 

 . In
 
 Dant
 
 the plaintiff alleged that the fare collection system on WMATA’s subways was "negligently designed, operated and maintained.” The court held:
 

 Design is distinct from operation and maintenance. As we interpret the claim, “operation and maintenance" involve ministerial rather than discretionary responsibilities.... Accordingly, Dant may properly pursue his claim under count three, but
 
 only
 
 insofar as he can establish that the injury alleged is directly attributable to negligent maintenance and operation, and not to negligent or faulty design.
 

 Dant v. District of Columbia, supra,
 
 264 U.S.App.D.C. at 290, 829 F.2d at 75 (emphasis in original).
 

 [7]
 

 . The trial court was well aware of the difference between immune policy judgments and actionable negligent implementation of such policy judgments. While it ruled that the District could not be sued for a decision not to relocate the bus stop, it did note that the District could be liable for failing to repair a deteriorating median strip.
 

 [8]
 

 . Appellants also challenge the trial court's ruling that under
 
 Goggins v. Hoddes,
 
 265 A.2d 302 (D.C.1970), both WMATA and the District were immune from liability for any negligence arising from the initial decision to locate the bus stop and from any subsequent relocation and maintenance because the stop was originally established pursuant to an administrative order from the Public Utilities Commission. Since we affirm the trial court's judgment on other grounds, we need not reach this issue.
 

 [9]
 

 .When we speak of an "intervening" act which breaks the chain of causation, we refer to what the Restatement calls a “superseding cause.”
 
 See
 
 Restatement (Second) of Torts § 440 (1965).
 

 [10]
 

 . This evidence was in the deposition testimony of a "bus operations analyst" employed by WMATA.