Elizabeth A. NEALON, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

The HARFORD MUTUAL INSURANCE COMPANY, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

Nos. 93–CV–983, 93–CV–1058.

District of Columbia Court of Appeals.

Argued Dec. 6, 1994.
Decided Dec. 28, 1995.

**5.** *Crowder v. United States,* 383 A.2d 336 (D.C. 1978).

David D'Agostino, with whom Thomas Fortune Fay was on the brief, for appellant Nealon.

Jeffrey A. Wothers for appellant Harford Mutual.

Sonia A. Bacchus, Assistant Corporation Counsel, with whom John Payton, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before WAGNER, Chief Judge, and TERRY and STEADMAN, Associate Judges.

WAGNER, Chief Judge:

Appellants, Elizabeth Nealon and the Harford Mutual Insurance Company (Harford), appeal from an order of the trial court dismissing their complaints for damages against appellee, the District of Columbia (the District), allegedly caused by the District's decision to lower the water pressure in fire hydrants in the Shepherd Park area of the city, rendering it inadequate to combat the fires which caused their losses. The District filed a motion to dismiss appellants' separate complaints for failure to state a claim under Super.Ct.Civ.R. 12(b)(6).[1] The District argued specifically that: (1) the "public duty" doctrine bars the claims; (2) the District is immune from liability for its discretionary decision to lower the water pressure in fire hydrants; (3) Nealon and Harford had no private cause of action under the various regulations upon which they relied; and (4) appellants failed to provide notice to the District of their claims as required by D.C.Code § 12–309.[2] The trial court dismissed both complaints, stating as its reason that there was "no personal duty owed to plaintiff[s] in this cause." Both appellants argue on appeal that the trial court erred in dismissing the complaints because (1) the public duty doctrine does not bar their complaints on the facts presented and (2) management of water pressure in the city's fire hydrants is a ministerial act for which the city is not immune from liability. We hold that the provision of water pressure in the city's fire hydrants is a discretionary function for which the District is immune from liabili-

---

**1.** The trial court consolidated appellants' separate cases, and this court consolidated the cases on appeal.

**2.** The adequacy of the § 12–309 notice is not an issue on appeal.

ty. We further hold that the public duty doctrine bars appellants' claims. Therefore, we affirm.

## I.

Appellant Harford alleged in its complaint that its policyholders, Sarah Lee and Wayne Blagmon, owned a single family home at 1221 Floral Street, N.W., on May 10, 1992 when a fire started at the adjacent residence at 1223 Floral Street. When the firefighters arrived, there was little to no water pressure for approximately ten minutes, and this delay resulted in the fire spreading to the home of Lee and Blagmon, causing damages in the amount of $203,103.22, which Harford paid under their policy. Harford alleged that the District's negligence in breaching its duty to provide adequate water service proximately resulted in Harford's damages. Harford also alleged that it was entitled to recover for the District's breach of contract in failing to provide sufficient water to the fire hydrants in the area.

Appellant Nealon alleged in her complaint that she owned a single family home at 7315—13th Street, N.W., on May 10, 1992. She alleged that water was provided to her home exclusively by the District, for which it charged her "for volume of water and per frontal foot and on an existing structure basis." Nealon claimed that the District, without notice, permitted a low water pressure in the fire hydrant near her home, which would be increased only in the event of a working fire. She alleged that as a proximate result of the District's breach of contract in failing to provide adequate water service to the hydrant, she lost her home valued at $250,-000. She also sued on a negligence theory based on the District's failure to provide safe water pressure and to warn her of the risk. On the negligence count, Nealon claimed damages for the value of her home at $250,-000 and furnishings at $50,000. She also demanded an additional $200,000 in damages for emotional and psychological distress which she claims she suffered as a result of witnessing her home being destroyed.[3]

## II.

In reviewing the trial court's dismissal of a complaint under Super.Ct.Civ.R. 12(b)(6), we must accept as true the factual allegations in the complaint and view the complaint in the light most favorable to the plaintiff. *Wanzer v. District of Columbia,* 580 A.2d 127, 129 (D.C.1990); *McBryde v. Amoco Oil Co.,* 404 A.2d 200, 202 (D.C.1979). The complaint should not be dismissed for failure to state a claim " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief.' " *Wanzer,* 580 A.2d at 129 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). Therefore, in deciding this case, we accept as true that the District made the decision to limit the water pressure in the fire hydrants in the Shepherd Park community and to increase it in the event of a working fire. Further, the District decided that "the water pressure could only be increased over a period of time by arrangement and coordination with the water department of the District of Columbia." We also accept as true appellants' allegations that as a result of the decreased water pressure in the fire hydrants, they sustained property damages because the water pressure was initially inadequate to combat the fires which destroyed the two homes. Thus, for purposes of our review of the dismissal under Rule 12(b)(6), we consider to be established that the District's actions in decreasing the water pressure proximately caused appellants' damages, and we consider whether the claims are barred by the doctrine of sovereign immunity or the public duty doctrine.

## III.

Appellants argue that the District's management of the water pressure was a ministerial, and not a discretionary function. Therefore, they contend, the District is not shielded from liability for its actions. The

**3.** Nealon did not allege specifically in her complaint how her home was destroyed; however, it is reasonable to infer from the complaint that she too had a fire. The District does not contend otherwise.

District contends that its decision to decrease the water pressure in the fire hydrants was a discretionary one, and therefore sovereign immunity bars appellants' suits.

■ In this jurisdiction, the doctrine of sovereign immunity acts as a bar to bringing suit against the District of Columbia for its discretionary functions. *Powell v. District of Columbia*, 602 A.2d 1123, 1126 (D.C.1992). The doctrine acts as a jurisdictional bar to bringing suit. *Id.; Aguehounde v. District of Columbia*, 666 A.2d 443, 447 (D.C.1995). The question of whether immunity is available under the doctrine turns upon whether the act complained of was discretionary or ministerial.[4] *Powell*, 602 A.2d at 1126. The District is immune only if the act was committed in the exercise of its discretionary function. *Id.; McKethean v. WMATA*, 588 A.2d 708, 715 (D.C.1991). If the act is committed in the exercise of a ministerial function, the District is not immune. *Powell*, 602 A.2d at 1126; *McKethean*, 588 A.2d at 715.

■ Whether an act is discretionary or ministerial is not always easy to discern. Generally, discretionary acts involve the formulation of policy, while ministerial acts involve the execution of policy. *McKethean, supra*, 588 A.2d at 715. Discretionary acts have also been defined as acts that require "personal deliberation, decision and ·judgment." *See* 18 E. MCQUILLIN, MUNICIPAL CORPORATIONS § 53.22.10, at 274 (3d ed. 1984). They generally have "a broad public effect and call for 'a delicate balancing of competing considerations.'" *McKethean*, 588 A.2d at 715 (quoting *Owen v. City of Independence*, 445 U.S. 622, 648, 100 S.Ct. 1398, 1413, 63 L.Ed.2d 673 (1980)). " 'Where there is room for policy judgment and decision, there is discretion.'" *Id.* (quoting *Dalehite v. United States*, 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953)). In contrast, ministerial acts require little or no judgment, and generally constitute "mere obedience to orders or performance of a duty

in which the [municipal employee] has little or no choice." *See* MCQUILLIN, at 274.

The provision of water service through a fire hydrant may be viewed as a part of the city's fire protection function. The availability of an adequate water supply is essential to that service. Indeed, claims of a municipality's failure to provide sufficient water for firefighting purposes have been considered by other courts as a failure to provide fire protection. *See e.g., Pierce v. Village of Divernon, Illinois*, 17 F.3d 1074, 1077 (7th Cir. 1994); *O'Dell v. City of Breckenridge*, 859 S.W.2d 166, 168 (Mo.App.1993); *see also Salusti v. Town of Watertown*, 418 Mass. 202, 635 N.E.2d 249, 251 (1994). This approach is reasonable and logical, considering the purpose for which water provided through fire hydrants is used. Therefore, we give consideration to how the discretionary/ministerial question has been treated in claims for damages resulting from the District's alleged failure to provide adequate fire protection.

■ In *Chandler v. District of Columbia*, 404 A.2d 964 (D.C.1979), plaintiff, the legal representative of the estates of her two deceased children, brought an action under the wrongful death and survival statutes against the District for claims arising out of their deaths. *Id.* at 965. The children died as a result of a fire in their home. Because of budgetary concerns, prior to the date of the fire, the District had made a decision to close a number of its fire stations on a rotating basis, including one near the children's home. Plaintiff alleged that the District was negligent in closing the fire station and that its negligence proximately caused the children's deaths. *Id.* The legal representative conceded that the alleged negligent action of the District in closing the fire station was prompted by policy considerations, and thus a discretionary decision for which the District was immune from liability under *Wade v. District of Columbia*, 310 A.2d 857, 860 (D.C.1973). In determining the applicability of the discretionary function exception, we

---

**4.** In *Aguehounde*, we observed that

> the common law terms distinguishing actions by a municipality which were immune from liability from those actions which were not, were "governmental" and "proprietary," re-

spectively. Over time, however, the terminology has evolved to the "discretionary" versus "ministerial" formulation....

*Id.* at 447 n. 6.

recognized in *Chandler* that our analysis must include a determination of whether judgment was exercised, as well as whether the decision called for policy considerations. 404 A.2d at 966. Since these questions were answered affirmatively with respect to the District's decision to close the fire stations, we concluded that the sovereign immunity doctrine removed the case from the court's jurisdiction.[5]

The District's decision to close fire stations in *Chandler* is similar to its decision to reduce the water pressure in the fire hydrants and to increase its availability only for working fires. Both involve decisions regarding fire protection. A municipality's decision regarding fire protection is protected from liability. *See Chandler, supra,* 404 A.2d at 966; *see also* McQUILLIN, *supra,* § 53.53, at 385 (fire departments and local governments are protected from liability for failure to provide adequate fire protection). Both cases reflect policy decisions of government officials. *See Chandler,* 404 A.2d at 966 (where the judgment is based on policy considerations, immunity bars suit). Both decisions reflect the District's allocation of financial or natural resources. Both decisions involve a schedule of operation. In *Chandler,* the fire station was closed on a random and rotating basis. *Id.* at 965. In this case, the fire hydrants were to be fully operable over a period of time by arrangement and coordination with the water department and increased for working fires. We are persuaded that the District's provision of a water supply for its fire hydrants is related to, if not a part of, its function of providing fire protection. *See Pierce, supra,* 17 F.3d at 1077; *O'Dell, supra,* 859 S.W.2d at 168. Therefore, consistent with recognizing fire protection services as a discretionary governmental function, we conclude that the provision of water pressure for the city's fire hydrants is also a discretionary function.

## IV.

Appellants also argue that the public duty doctrine does not protect the District from liability because of the "special relationship" between appellants and the city. "The public duty rule provides that where a municipality has a duty to the general public, as opposed to a particular individual, breach of that duty does not result in tort liability." McQUILLIN, *supra,* § 53.04.25, at 165. Under the public duty doctrine, " 'a person seeking to hold the District of Columbia liable for negligence must allege and prove that the District owed a special duty to the injured party, greater than or different from any duty which it owed to the general public.' " *Powell, supra,* 602 A.2d at 1129 (quoting *Klahr v. District of Columbia,* 576 A.2d 718, 719 (D.C.1990)). Liability arises out of a "special relationship" between the city and the injured party. *Id.* Such a special relationship can be established in two ways: (1) by a statute prescribing " 'mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole' "; or (2) " 'a direct contact or continuing contact between the [injured party] and the governmental agency ... and [ ] justifiable reliance on the part of the victim.' " *Id.* at 1129–30; *Morgan v. District of Columbia,* 468 A.2d 1306, 1314 (D.C.1983) (en banc); *Platt v. District of Columbia,* 467 A.2d 149, 151 (D.C.1983). The public duty doctrine has been described as an exception to the non-liability rule. *See Morgan,* 468 A.2d at 1315; *Chandler, supra,* 404 A.2d at 966–67. Appellants contend that the allegations in their complaints bring them within the exceptions.

First, appellants argue that the District of Columbia Municipal Regulations (DCMR) impose a duty upon the city to provide a water supply and that the breach of that duty allows them to recover on a negligence theory. Specifically, they point to the

---

5. In rejecting the legal representative's argument that the ministerial/discretionary test should be abolished, this court stated that it could not depart from binding precedent nor would it, given the compelling considerations supporting the doctrine of sovereign immunity. *Chandler, supra,* 404 A.2d at 965. Among these considerations are (1) the preservation of the dividing line between legislative and judicial functions, (2) the prevention of "an unhealthy stasis in policy choices and decision-making," and (3) the recognition that for certain decisions made in the exercise of discretionary functions, "there is no reason to believe a jury would render a sounder decision than those officials chosen, qualified, and prepared to make them." *Id.* at 965–66.

Plumbing Code which states that "[a] public water supply system shall be considered available ... when a public water supply system is within 100 feet (30.48m) of a one- or two-family dwelling, measured along a street ... or "when ... within 500 feet (152.4m) of the premises of any other occupancy, measured along a street." 12B DCMR, Article 3, §§ P–303.2 to 303.2.2. They also cite sections of the Water and Sanitation Regulations, 21 DCMR §§ 105, 106, which establish strict controls governing the circumstances under which individuals may use a hydrant or obtain permits for its use and penalties for violations of the regulations.[6] The language of these regulations does not set forth " 'mandatory acts clearly for the protection of a particular class of persons rather than the general public as a whole,' " which is necessary to meet the criteria for the exception. *Turner v. District of Columbia*, 532 A.2d 662, 667 (D.C.1987) (quoting *Morgan, supra,* 468 A.2d at 1314)); *accord, Powell, supra,* 602 A.2d at 1129. These regulations do not mandate that the city provide water to fire hydrants at a particular level of pressure or at particular times. The fact that the regulations suggest certain specified locations for the public water supply system does not alter the fact that the public water supply is for the benefit of the general public rather than any particular individual. These regulations address the water supply to the District as a whole, and not just for a particular group of citizens.[7] Therefore, appellants have not demonstrated that they fall within the exception because a statute or regulation imposes a duty upon the city to maintain the water pressure in its fire hydrants at a certain level or establishes a special relationship with appellants.

▬▬▬ The second way to establish the special relationship exception requires a showing of (1) " 'a direct contact or continuing contact between the victim and the government agency or official; and (2) a justifi-

able reliance on the part of the victim.' " *Powell, supra,* 602 A.2d at 1130 (quoting *Platt, supra,* 467 A.2d at 151). Appellants contend that the District's charge and collection for water and sewer services pursuant to D.C.Code §§ 43–1526 through 1529 establish a direct or continuing contact. The first prong of the test requires that there be " 'some form of privity between the [agency] and the victim that sets the victim apart from the general public. . . . That is, the victim must become a reasonably foreseeable plaintiff.' " *Id.* The contact must be a " 'direct transaction with the person injured' or 'an arms-length relationship in which the city's agent is dealing directly, in some form, with the person injured.' " *Id.* With regard to the second prong of the test, "justifiable reliance ... means particular or special reliance." *Morgan, supra,* 468 A.2d at 1315. More than general reliance is needed, and appellant must act or fail to act in such a way as to show particular reliance upon the actions of the agency. "Liability is established [if the agency has] specifically undertaken to protect a particular individual and the individual has specifically relied upon the undertaking." *Id.*

▬▬▬ Thus, in order for there to be direct contact, the city must enter into a " 'direct transaction with the injured party,' " or in the case of an arms-length relationship, the city's agent must in some form deal directly with the injured person. *Powell, supra,* 602 A.2d at 1130. While paying a fee may be considered in determining whether there was "direct contact" between appellants and the District, it cannot by itself create the requisite special relationship. *Id.* at 1131 (upholding public duty doctrine where plaintiff paid fee to obtain automobile license and registration certificate); *cf. Wanzer, supra,* 580 A.2d at 131; *see Gatewood v. City of Detroit,* 121 Mich.App. 57, 329 N.W.2d 34, 35 (1983) (holding that fees paid by homeowner for water service to residence creates no obligation to

6. For example 21 DCMR provides in §§ 105.1 and 105.2:

No person shall open or cause to be opened or assist in opening any fire hydrant under the *control* of the Mayor of the District of Columbia, except as specifically provided in this section.

Fire hydrants may be opened in the case of actual fire, but only to the extent necessary to combat the fire.

7. *Cf. Turner, supra,* 532 A.2d at 667.

supply water to fire hydrants for firefighting). Therefore, the fact that appellants pay water rates, in itself, does not create a special relationship.

Appellants also contend that the District established "direct contact" with them because the D.C.Code and regulations provide penalties for failure to pay service charges (D.C.Code § 43–1529) and for unnecessary water waste (21 DCMR §§ 107.1 and 107.4), and that this "direct contact" required the District to provide them with adequate water from the hydrant. The collection of charges for water from the owner or occupant of a building pursuant to D.C.Code §§ 43–1526 through 1529 does not show direct contact between the city and the injured party necessary to meet the requirements of the special relationship exception. A party must show that such contact was different from the type of contact that the District has with the general public. *Powell, supra,* 602 A.2d at 1130; *see also Wanzer, supra,* 580 A.2d at 132 (one time call to 911 for help does not establish direct contact needed for special relationship exception; the agency's or city official's response to the private party "must in some demonstrable way exceed the response generally made to other members of the public"). Appellants have not shown that the District established the type of contact necessary to create a duty to provide services to them which is different from the District's duty to provide water to the general public.

Therefore, we need not decide whether appellants established the second prong of the special relationship test, *i.e.,* that they justifiably relied on the District's provision of adequate water pressure in the hydrant. *See Powell, supra,* 602 A.2d at 1130. Appellants must satisfy both prongs of the special relationship test in order to defeat the District's immunity from liability under the public duty doctrine. Having failed to meet the first prong of the test, appellants cannot prevail on their claim.

## V.

For the foregoing reasons, we conclude that the decision of the District to limit the water pressure in the fire hydrants was dis-cretionary, and therefore the District is immune from liability for its decision. Appellants also failed to show a special relationship with the District which would bring them within the special relationship exception to the public duty doctrine. Therefore, the order dismissing appellants' complaints is

*Affirmed.*