Marilyn SIMPKINS, Plaintiff,

v.

UNITED STATES of America and Washington Metro Area Transit Authority, Defendants.

Civil Action No. 01–1288 (RBW).

United States District Court, District of Columbia.

March 31, 2003.

Geoffrey Davies Allen, Washington, DC, for plaintiff.

Madelyn Elise Johnson, Laurie J. Weinstein, Washington, DC, for federal defendant/cross-defendant.

Lisa Denise Fentress, Washington Metropolitan Area Transit Authority, Washington, DC, for defendant.

## MEMORANDUM OPINION

WALTON, District Judge.

The plaintiff's complaint arises from injuries she sustained in the District of Columbia upon alighting from a bus, owned

and operated by the Washington Metropolitan Area Transit Authority ("WMATA"), when her foot came into contact with an unpaved section of the sidewalk on parkland property owned by the United States, otherwise known as Union Station Plaza. Federal Defendants' Statement of Material Facts Not in Genuine Dispute ("Fed. St. of Facts") at ¶ 3; Plaintiff's Statement of Facts Not in Dispute ("Pl.'s St. of Facts") at ¶ 2. This matter is currently before the Court on the Federal Defendants' Motion to Dismiss or in the Alternative for Summary Judgment ("Fed.Mot."). The federal government asserts that it is not a proper defendant because WMATA is responsible for maintaining the sidewalk at the bus stop pursuant to a Cooperative Agreement that was entered into by the federal government and WMATA. This Cooperative Agreement provides that WMATA is "fully responsible for the management, maintenance, protection, use and safety of all transit facilities located over, under or on parkland." Fed. Mot., Exhibit ("Ex.") G (Cooperative Agreement Between the Secretary of the Interior by and through the National Park Service and the Washington Metropolitan Area Transit Authority) ("Cooperative Agreement"), ¶ 16. According to the federal defendant, paragraph 16 of the Cooperative Agreement covers the sidewalk in front of the bus stop, and thus WMATA was solely responsible for the plaintiff's injuries. For the reasons set forth below, the Court will deny the federal defendant's motion because the federal defendant had a duty of care to the public to ensure that the sidewalk was safe.

### I. Factual Background

On September 1, 1999, the plaintiff, a forty-five year-old woman, was exiting a WMATA bus at Columbus Circle, N.E., Washington, D.C., when her foot allegedly came into contact with an unpaved section of the sidewalk and she fell. Fed. St. of Facts at ¶¶ 1–2; Pl.'s St. of Facts at ¶¶ 1–2. It is undisputed that the location of the accident was on parkland owned by the United States. Fed. St. of Facts at ¶ 5; Pl.'s St. of Facts at ¶ 3. What is in dispute is who was responsible for the maintenance of this location and the effect of the paragraph 16 of Amendment Number 2 of the Cooperative Agreement on this question.

### II. Standard of Review: Rule 56

The defendant has sought dismissal of the plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) or summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court's consideration of whether the plaintiff's pleading stated a claim upon which relief could be granted under Rule 12(b)(6) has led it to consider matters outside of the pleadings. Federal Rule of Civil Procedure 12(b) states, in part, that:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Therefore, this Court will examine the plaintiff's claims under Rule 56.

Summary judgment is generally appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing a summary judgment motion, the Supreme Court has explained that a trial court must look to the substantive law of the claims at

issue to determine whether a fact is "material", *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). And a "genuine issue" of fact is "one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action." *Sanders v. Veneman*, 211 F.Supp.2d 10, 14 (D.D.C.2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

While it is generally understood that when considering a motion for summary judgment a court must "draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true," *Greene v. Amritsar Auto Servs. Co.*, 206 F.Supp.2d 4, 7 (D.D.C.2002) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505), the non-moving party must establish more than "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position", *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. To prevail on a summary judgment motion, the moving party must demonstrate that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The District of Columbia Circuit has stated that the non-moving party may not rely solely on mere conclusory allegations. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C.Cir.1993). Thus, "[i]f the evidence is merely colorable ... or is not significantly probative ... summary judg-

ment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### III. *Legal Analysis*

■] The crux of the federal defendant's position is that while it acknowledges that it owns the parkland at the site of the accident, Fed. St. of Facts at ¶ 5, it transferred any responsibility for maintaining the property to WMATA pursuant to the Cooperative Agreement. As this Court mentioned above, the Cooperative Agreement provides that WMATA "hereby agrees, except as otherwise modified by separate agreement(s), to be fully responsible for the management, maintenance, protection, use and safety of all transit facilities located over, under or on parkland." Fed. Mot., Ex. G. "Transit facilities" are defined in the Cooperative Agreement as follows:

'Transit facilities' means all real and personal property located in the [WMATA] Zone,[1] necessary or useful in rendering transit service between points with the Zone, by means of rail, bus, water or air and any other mode of travel, including without limitation, tracks, rights of way, bridges, tunnels, subways, rolling stock for rail, motor vehicle, marine and air transportation, stations, terminals and ports, areas for parking and all equipment, fixtures, buildings and structures and services incidental to or required in connection with the performance of transit service[.]

Public Law 89–774, 80 Stat. 1324. And, "transit services" constitute "the transpor-

---

1. The Washington Metropolitan Area Transit Zone is defined in the following section:

There is hereby created the Washington Metropolitan Area Transit Zone, which shall embrace the District of Columbia, the cities of Alexandria, Falls Church and Fairfax and the counties of Arlington and Fair-

fax and political subdivisions of the Commonwealth of Virginia located within those counties, and the counties of Montgomery and Prince George's in the State of Maryland and political subdivisions of the State of Maryland located in said counties.
Public Law 89–774, 80 Stat. 1324.

tation of persons and their packages and baggage by means of transit facilities between points within the Zone ..." *Id.* The federal defendant asserts that because 'transit facilities' "include all areas made available to passengers disembarking from Metrobuses, and would specifically include the area of Columbus Circle, NE[,] Washington, D.C.[,]" which is the site of the plaintiff's accident, the United States has no duty of care and thus cannot be held liable for the plaintiff's injuries. Federal Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Fed.Mem.") at 6–7.

The Court begins its analysis of the federal defendant's argument that it did not owe a duty of care to the plaintiff with respect to the injuries she sustained on its parkland, by looking at the property at issue and the interests of the United States, WMATA, and the District of Columbia in this property. In *Lovitt v. District of Columbia*, 942 F.Supp. 618 (D.D.C. 1995), another member of this Court was presented with a similar factual scenario where the plaintiff was allegedly injured when she "slipped and fell on a sidewalk located in front of a bus stop at 50 Massachusetts Avenue, N.E., in the District of Columbia." [2] *Id.* at 618. The *Lovitt* Court concluded that, although the plaintiff asserted that the District of Columbia was primarily responsible for maintaining the sidewalks in a "reasonably safe condition[,]" *id.* at 619 (citing *Conner v. United States*, 309 F.Supp. 446 (D.D.C.1970)), *aff'd*, 461 F.2d 1259 (D.C.Cir.1972); *Leary v. District of Columbia*, 166 F.Supp. 542 (D.D.C.1958), because "the property on which the plaintiff fell was ceded to the United States for park purposes pursuant to a transfer of jurisdiction[,]" the District of Columbia could not be held liable, *id.* at 620.[3] Implicit in the decision was the court's recognition that the United States, as the property owner of the land where the bus stop was located, had a general duty to exercise reasonable care in maintaining this public space in a safe condition.

The *Lovitt* Court's view finds support in the law of the District of Columbia, as the District of Columbia Court of Appeals has held that a common carrier, such as WMATA, is generally not responsible for maintaining the sidewalk in front of a bus stop. *See McKethean v. Washington Metro. Area Transit Auth.*, 588 A.2d 708 (D.C. 1991). Thus, the District of Columbia Court of Appeals found that WMATA did not owe a duty of care to prospective passengers waiting on the sidewalk at a bus stop for a WMATA bus to arrive. *Id.* at 712. Rather, the court held, it was the District of Columbia, as the owner of the sidewalk, that owed a duty of care to the public. The *McKethean* Court found that a duty of care "arise[s] if the property upon which an individual stands when injured is either owned by or under the control of the carrier." *Id.* (citing *Webster v. Capital Transit Co.*, 200 F.2d 134, 135 (D.C.Cir.1952); *Chvala v. D.C. Transit System, Inc.*, 306 F.2d 778 (D.C.Cir.1962)). However, the Court of Appeals noted that because the plaintiffs were not boarding or leaving a WMATA bus, but merely waiting on a sidewalk at a bus stop owned by the District of Columbia, WMATA did not owe a duty of care to the prospective passen-

---

**2.** Although it is not clear, it appears that the plaintiff in *Lovitt* was not a WMATA passenger, but merely a pedestrian walking in front of a bus stop.

**3.** Although the United States was a third-party defendant in *Lovitt*, the court there dismissed the plaintiff's case because the plaintiff did not bring a tort claim directly against the United States, but only against the District of Columbia. *Lovitt*, 942 F.Supp. at 620.

gers. *Id.* (citing Standardized Civil Jury Instructions for the District of Columbia, No. 8.10 (1981) (common carrier has no responsibility to maintain or repair public space at a bus stop)). Implicit in this conclusion is that the owner of the sidewalk owes a duty of care to the public and that the sidewalk in front of a bus stop is not "under the control of the carrier." *Id.*

The United States attempts to distinguish *Lovitt* and the general proposition that the property owner of a sidewalk is responsible for injuries occurring on it "from the current situation [by pointing out that] there is no mention [in *Lovitt*] of any provision delegating the responsibility of maintenance of transit facilities to another entity in contrast to the presence of Paragraph 16 in this case." Fed. Mem. at 9 n. 5. While the sidewalk in front of the bus stop in this case may be considered a "transit facility," a decision this Court need not conclusively make at this time, even if the United States transferred the responsibility of maintaining this sidewalk to WMATA, the United States still owes a duty to the public to ensure that this sidewalk is safe. For example, the United States cannot absolve itself from the responsibility of maintaining the sidewalk in a safe condition because non-WMATA passengers (including prospective WMATA passengers) using the sidewalk at the bus stop at Union Station have a reasonable expectation that the sidewalk is safe to use. While the Cooperative Agreement may provide for the use of this parkland as a "transit facility," and for WMATA to maintain the property in a safe condition, the United States certainly did not transfer possession or ownership of this property to WMATA, nor does WMATA have exclusive control over this bus stop. WMATA simply uses this property for the limited purpose of dropping-off and picking-up passengers. Notwithstanding the Cooperative Agreement, the United States is unable to delegate its duty of care to WMATA and thus the Court finds that the United States owed a duty of care to the plaintiff as the owner of this parkland.

■] What the Cooperative Agreement does provide, however, is a potential avenue for the United States to seek indemnification from WMATA. While this Court finds that the United States is unable to delegate its duty of care to this parkland, WMATA agreed to "be fully responsible for the management, maintenance, protection, use and safety of all transit facilities located over, under or on parkland." Fed. Mot., Ex. G. Whether the sidewalk is considered a "transit facility" within the meaning of the Cooperative Agreement and whether Paragraph 16 is an indemnity provision are questions this Court can leave for another day. Thus, "while a party may not be able to exempt itself from tort liability for its nondelegable duties, there is no bar to contractual indemnification for such potential liability." *W.M. Schlosser Co. v. Maryland Drywall Co.*, 673 A.2d 647, 653 n. 13 (D.C.1996) (citing *Mead v. National R.R. Passenger Corp.*, 676 F.Supp. 92, 95 (D.Md.1987) ("Indemnification against liability is not the same as exemption from liability.")).

## IV. *Conclusion*

For the reasons stated above, the Court will deny the federal defendant's motion to dismiss or in the alternative for summary judgment, having concluded that the United States owes a duty of care to the public, and to the plaintiff, to maintain the property it owns in a safe condition. The United States is therefore a proper defendant in this case.

**SO ORDERED** this 31st day of March,

2003.[4]

### ORDER

Upon consideration of the Federal Defendants' Motion to Dismiss or in the Alternative for Summary Judgment, and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is hereby,

**ORDERED** that the federal defendant's motion is **DENIED.**

4. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.