Patrick D. **DANT**, Appellant,

v.

**DISTRICT OF COLUMBIA, et al.**

No. 86–5063.

United States Court of Appeals, District of Columbia Circuit.

Argued April 13, 1987.

Decided Sept. 11, 1987.

Richard W. Balsamo, Washington, D.C., for appellant.

Carol A. Sigmond, with whom Sara E. Lister and Mark R. Pohl, Washington, D.C., were on the brief, for appellee WMATA.

Edward E. Schwab, Asst. Corp. Counsel, with whom James R. Murphy, Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee District of Columbia.

Before SILBERMAN, BUCKLEY and D.H. GINSBURG, Circuit Judges.

BUCKLEY, Circuit Judge:

A member of the Washington Metropolitan Area Transit Authority's ("WMATA") police force arrested Patrick D. Dant for not paying a forty-five cent fare before exiting a WMATA subway station located in the District of Columbia. Dant was then detained by District of Columbia police for several hours. At his arraignment he was charged with fare evasion and pleaded not guilty. The District of Columbia Corporation Counsel sought a conviction, but the Superior Court of the District of Columbia dismissed the case. Dant then brought this action for damages and injunctive relief against WMATA, the WMATA arresting officer, and the District of Columbia. The district court dismissed all claims against WMATA on grounds of sovereign immunity, and dismissed *sua sponte* the rest of the claims against the District of Columbia. Dant appeals.

We hold that in approving the Washington Metropolitan Area Transit Authority Compact creating WMATA, Congress has foreclosed judicial remedy against WMATA for all torts, including invasions of federal civil rights, committed by WMATA in the exercise of police functions related to the arrest of suspected fare evaders; and that upon a showing of probable cause, the arresting officer is entitled to immunity from civil suit. We also hold that WMATA is immune from claims for the negligent design of its fare collection system. Appellant's claims against the District of Columbia for false arrest and imprisonment lacked merit because there was probable cause, and his malicious prosecution and abuse of process claims against the District were barred by absolute prosecutorial immunity. We also conclude that appellant's remaining constitutional and civil rights claim for WMATA's abuse of process under 42 U.S.C. § 1983 is insufficient as a matter of law.

On the other hand, the district court erred in dismissing appellant's common law claims against WMATA for negligent operation and maintenance of its fare collection system and for abuse of process as both of the allegations fall within the scope of WMATA's waiver of sovereign immunity. We therefore affirm in part, reverse in part, and remand the case to the district court for further proceedings on Dant's common law claims against WMATA for abuse of process and for negligence in the operation and maintenance of its fare collection system.

## I. BACKGROUND

On November 6, 1966, Congress created WMATA by approving an interstate compact between the Commonwealth of Virginia and the State of Maryland to which the District of Columbia was also a signatory. Washington Metropolitan Area Transit Authority Compact, Pub.L. No. 89–774, 80 Stat. 1324 (1966), *amended by* Pub.L. No. 94–306, 90 Stat. 672 (1976) (authorizing creation of WMATA police force) ("Compact"). WMATA operates a system of underground and surface trains traveling to and from points in Virginia, Maryland, and Washington, D.C. ("metrorail"). Because this case relates to metrorail's fare collection system, a basic understanding of its operation must preface the discussion of our decision.

### A. *The Metrorail Farecard System*

Metrorail's fare collection system is almost entirely automated. To enter the metrorail complex, patrons must purchase "farecards" from vending machines located at station entrances. Each farecard has a magnetic strip on which its fare value is recorded. Turnstile devices ("faregates") located in every station are designed to read these strips. To obtain access to the train platforms, a patron must insert his farecard in an entrance faregate that determines the value of his farecard, returns it to him, and allows him to pass if the farecard is worth at least the minimum fare. The area at metrorail stations between faregates and train platforms, including

the trains themselves, is called the "paid area."

Although a patron may enter the metrorail system using a farecard worth only the minimum fare, he may actually owe a higher fare if he travels beyond a certain distance. There is also an additional charge for travel during rush hours. When exiting a station a patron must insert the same farecard he used to enter the metrorail system into an exit faregate. The exit faregate will determine the value of his card and the distance he traveled. If he owes WMATA additional fare, the exit faregate will not open, will emit a characteristic sound, and flash the sign "Go To Addfare." The patron must then proceed to an "Addfare" machine located within the paid area, introduce his farecard in it, and pay whatever additional fare his distance or time of travel requires. Upon payment, the Addfare machine subtracts the fare due from the balance recorded in the card's magnetic strip and returns the card to the patron. If the patron tries to pass through an exit faregate using a farecard other than the one he used to enter the metrorail system, the exit faregate will not be able to determine the distance traveled, will not open, and will flash the sign "Stop, See Attendant."

## B. *The Arrest*

Appellant Dant lived and worked in the District of Columbia on April 15, 1982. According to appellant, that afternoon he boarded a train at metrorail's Metro Center station and got off two stops later at Dupont Circle. It was approximately five o'clock. He had two farecards in his possession, one of them doubling as a bus pass (called a "flashpass"). As he approached the 20th Street exit of the Dupont Circle station, he took out a card from his wallet and inserted it into an exit faregate. He passed through the faregate when it opened for the patron exiting ahead of him and reached from outside the enclosed paid area to retrieve his card from the faregate. At that moment he noticed a lighted sign on top of the faregate flashing "Stop, See Attendant." Dant retrieved his farecard, turned towards the faregate, and hesitated

for a moment. He concedes that he then simply walked away.

Officer Joseph F. Lawrence of the WMATA police was on duty that afternoon at the Dupont Circle faregates leading to 20th Street. He observed the incident and approached Dant from behind. According to Dant, Lawrence stopped and escorted him back to the paid area through an emergency gate, led him to an Addfare machine, and asked to see his farecard. Dant took out one of his farecards, but does not know whether it was the card he used to enter the metrorail system at Metro Center station. When the officer inserted it into the Addfare machine, the machine flashed "Add 45 cents." At the time the minimum fare from Metro Center to Dupont Circle was sixty-five cents. The Addfare machine therefore must have determined the card was worth twenty cents. The record does not explain how appellant could have entered the metrorail system with a card worth less than the minimum fare, and there is no indication that Lawrence asked appellant whether he had another farecard.

Officer Lawrence placed Dant under arrest, bound him in handcuffs, and led him to the surface through the rush-hour crowd. According to Dant, at least one of his acquaintances passed by and saw him in handcuffs. Dant and Lawrence then waited approximately twenty minutes for a police car, which transferred Dant to a District of Columbia police precinct headquarters. He was eventually transferred to central headquarters, where he waited in a patrol wagon for processing. He was also confined to a cell during part of his stay. Police did not remove his handcuffs until he was released at midnight.

## C. *Criminal Proceedings*

The District of Columbia Corporation Counsel charged Dant with a violation of D.C.Code § 44-224 (1981), which provides:

No person shall ... knowingly enter or leave the paid area of a real [sic] transit station owned and/or operated by the Washington Metropolitan Area Transit Authority which is located within the cor-

porate limits of the District of Columbia without paying the established fare or presenting a valid transfer for transportation on such public passenger vehicle or rail transit car.

Dant pleaded not guilty. Before trial, according to the complaint, the District of Columbia Corporation Counsel refused to drop charges unless Dant would agree to waive all claims for damages against WMATA and the District. Dant refused, and prosecution followed. The trial court dismissed the case.

### D. *Dant's Civil Action*

Dant then brought this suit against WMATA, Lawrence, and the District of Columbia. The complaint recites the following counts: (1) false arrest and false imprisonment; (2) malicious prosecution; (3) negligence in the design, operation and maintenance of metrorail's farecard system, and in the training of WMATA police officers; (4) abuse of process; and (5) deprivation of civil rights in violation of 42 U.S.C. § 1983. All counts except the third (negligence) allege violations by both the District and WMATA. Officer Lawrence's conduct is implicated in counts one and five only.

Appellee WMATA moved under Fed.R. Civ.P. 12(b)(6) to dismiss all counts in the complaint against itself and appellee Lawrence. It argued that WMATA is equivalent to a state agency enjoying absolute immunity from tort liability, and that section 80 of the WMATA Compact contains only a limited waiver of sovereign immunity that does not apply to Dant's claims. Section 80 of the Compact provides thus:

The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent [sic] committed in the conduct of any *proprietary* function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a *governmental* function.

Compact § 80 (emphasis added). Accordingly, WMATA contended, all claims except count four (abuse of process) relate to protected "governmental" functions, and the abuse of process claim could only be maintained against the District of Columbia as the prosecuting authority. *See* Brief for WMATA and Lawrence at 15–16, 28–29 ("Brief for WMATA").

The District of Columbia did not join WMATA's motion to dismiss. The district court granted WMATA's motion and also *sua sponte* dismissed all claims against the District. The court explained the reasons for its decision in a subsequent memorandum opinion. According to the court, Dant's common law claims were "on all fours with *Stebbins v. WMATA*, 495 A.2d 741 (D.C.App.1985)," and Dant's section 1983 claims "are insufficient as a matter of law." *Dant v. District of Columbia, et al.*, Civ. No. 83–1063, mem. op. at 1 (D.D.C. Dec. 28, 1985) ("District Court Mem. Op."). Because the court relied on deposition evidence in reaching its decision and did not limit its reasoning to the facts alleged in the pleadings, Dant argues the decision should be reviewed as a motion for summary judgment. Brief for Dant at xix. WMATA responds that "the Court of Appeals may affirm on the basis of any grounds supported by the record." Brief for WMATA at 10.

The District of Columbia has filed a brief urging affirmance on prosecutorial and governmental immunity grounds.

## II. DISCUSSION

This is a case about a failure to pay forty-five cents, but its resolution in accordance with the rule of law requires clarification of important doctrines concerning sovereign immunity, the privileged functions of prosecutors, probable cause to arrest and imprison, and federal civil rights.

### A. *Common Law Claims Against WMATA and Officer Lawrence*

#### 1. WMATA

Since the district court's ruling, we have decided two cases in which the scope of WMATA's waiver of sovereign immunity is carefully defined. *See Sanders v. WMA-*

*TA*, 819 F.2d 1151 (D.C.Cir.1987); *Morris v. WMATA*, 781 F.2d 218 (D.C.Cir.1986). Both decisions reaffirm the vitality of the doctrine of sovereign immunity in this circuit.

*Morris* contains three essential elements. We held in *Morris* that the signatories of the Compact, and Congress through its legislative approval of the document, clothed WMATA with immunity from suit of the type the Supreme Court has recognized sovereigns enjoy. *See Principality of Monaco v. Mississippi*, 292 U.S. 313, 321–22, 54 S.Ct. 745, 747, 78 L.Ed. 1282 (1934). We also acknowledged that section 80 of the Compact waives WMATA's immunity for torts committed in the exercise of its "proprietary" functions, but not for WMATA's "governmental" conduct. Applying these principles, *Morris* held that WMATA's police activities are an exercise of a "governmental" function, and hence lie outside the scope of section 80's waiver of sovereign immunity.

■ *Morris* therefore requires that we affirm the district court's dismissal of all claims against WMATA relating to WMATA's police functions, including the claim under count three of negligent training of WMATA police officers. Our reasoning in *Morris* also requires dismissal of the malicious prosecution claim. The reports forming the basis for the criminal charge the District brought against Dant were prepared by Lawrence in the discharge of his duties as a policeman. Similarly, swearing to a criminal complaint is an integral part of the police function and, therefore, is clearly "governmental." As we stated in *Morris*, " '[i]f the operation of a police force is not a governmental function, then a governmental function may not exist.' " 781 F.2d at 220 (quoting *Martin v. WMATA*, 667 F.2d 435, 436 (4th Cir.1981)).

Our second recent decision, *Sanders*, interpreted section 80 as it applies to WMATA activities which, unlike police functions, are not quintessentially governmental. The activities challenged were related to WMATA's implementation of a policy requiring drug testing of bus drivers involved in traffic mishaps. In that context

we held that the Compact's signatories and Congress sought to make WMATA immune "from courts' 'second-guessing' through private tort suits 'the political, social, and economic judgments of an agency exercising its regulatory function.' " *Sanders*, 819 F.2d at 1155 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 820, 104 S.Ct. 2755, 2768, 81 L.Ed.2d 660 (1984)). Thus we declined to interpret section 80 as requiring the court to distinguish between public and private sector functions in every case, a task so difficult, given the state of our society, that it would sometimes invite arbitrary judicial decision. Rather, preserving within the governmental sphere functions only governments can generally perform, we interpreted section 80 as incorporating the distinction between discretionary and ministerial functions well known when Congress approved the Compact.

■ For the purpose of preventing the "second-guessing" we barred in *Sanders*, there is no material difference between the challenge to the drug testing policy rejected in *Sanders* and the challenge to the design of WMATA's fare collection system that we reject here. As explained above in some detail, metrorail's fare collection system is almost completely automated. Every patron's steps through the system, from farecard machine to train platform, are subject to a complex design approved by WMATA in the exercise of its policy discretion. It might be precisely the system's automation that caused Dant injury, but section 80 of the Compact, as interpreted by *Sanders*, clearly requires dismissal of that part of count three alleging negligence in the design of metrorail's farecard system.

Count three ᷾also alleges negligence in the operation and maintenance of the farecard system. Dant's negligence theory is as follows:

At all times relevant to this suit defendant WMATA was aware or, through the exercise of due care, should have been aware that a negligently designed, *operated and maintained* fare card system frequently resulted in confusion in the minds of passengers as to the monetary

value which remained on a metrorail fare card or metrorail pass which has been used for a trip within the system.

First Amended Complaint at 7, ¶ 40, *Dant v. District of Columbia*, Civ. No. 83–1063 (D.D.C. Dec. 30, 1983) ("Complaint") (emphasis added).

■ Design is distinct from operation and maintenance. As we interpret the claim, "operation and maintenance" involve ministerial rather than discretionary responsibilities and therefore are not shielded by WMATA's sovereign immunity. Accordingly, Dant may properly pursue his claim under count three, but *only* insofar as he can establish that the injury alleged is directly attributable to negligent maintenance and operation, and not to negligent or faulty design.

Finally, the district court erred in denying Dant the opportunity to bring to trial his abuse of process claim against WMATA. Count four states:

47. Defendants District of Columbia and WMATA sought to compel plaintiff to sign a civil release from all liability by refusing to "no paper" the case unless plaintiff gave said release.

48. Plaintiff refused to sign the said release from all civil liability.

49. The request by WMATA for a release from civil liability as a condition precedent to dropping all criminal charges against plaintiff was a decision made by officials and agents of WMATA, in the exercise of WMATA's proprietary function as owner and operator of the metrorail transit system.

Complaint at 9.

■ We interpret the quoted part of count four as a claim that agents of WMATA, in the exercise of ministerial functions, committed abuse of process for which Dant may recover in tort. *See Sanders*, 819 F.2d at 1154–1156. In reaching this conclusion we note that our decision in *Morris* is inapplicable here. The abuse of process claim, by its own terms, does not concern Dant's arrest or the decision to initiate criminal process against him. Rather, it concerns WMATA's alleged decision not to drop charges solely because Dant would not release WMATA from civil liability. That alleged decision, unlike the decision to arrest, clearly was not taken in the course of police functions.

2. Officer Lawrence

■ Members of the WMATA transit police, when acting within the scope of their responsibilities, are engaged in governmental functions within the meaning of section 80 of the Compact. *Hall v. WMATA*, 468 A.2d 970, 973 (D.C.App.1983). When a transit officer has probable cause to make an arrest, he has absolute immunity from a subsequent civil suit for that action. *See Stebbins v. WMATA*, 495 A.2d 741, 743 (D.C.App.1985). As the district court correctly found, "[t]he undisputed testimony shows that Officer Lawrence had probable cause to arrest Mr. Dant when he observed him exiting the Dupont Circle Metro Station before the gates had closed on the previous passenger in spite of the fact that Dant's own card was rejected by the machine with the instruction to go to add fare." District Court Mem.Op. at 5. Accordingly, we affirm the district court's dismissal of the common law claims against Officer Lawrence.

B. *Common Law Claims Against the District of Columbia*

Dant challenges the district court's dismissal on its own motion of all claims against the District without affording Dant an opportunity to oppose the decision. Although we are mindful of his procedural rights, we can discern no cognizable prejudice to Dant resulting from the district court's dismissal *sua sponte* of all claims against the District. *See* Fed.R.Civ.P. 61 (harmless error). *Compare Dougherty v. Harper's Magazine Co.*, 537 F.2d 758, 761 (3d Cir.1976).

■ As the district court correctly held, Dant's common law claim for malicious prosecution is barred under local law by absolute prosecutorial immunity. *Stebbins v. WMATA*, 495 A.2d 741, 743–44 (D.C.App. 1985). In *Stebbins* the District of Columbia Court of Appeals considered a malicious

prosecution claim brought against the District of Columbia by a WMATA patron accused of bus fare evasion in violation of section 44–224. Plaintiff Stebbins had been acquitted because the criminal trial court decided to "[g]ive you a break this time." *Id.* at 742. The *Stebbins* court adopted this court's distinction between a prosecutor's absolutely immune advocacy functions, and his qualifiedly immune administrative functions, *id.* at 743–44 (citing *Briggs v. Goodwin,* 569 F.2d 10, 19–20 (D.C.Cir.1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978)), and held that the decision to commence Stebbins' prosecution was absolutely immune under local law from a claim for malicious prosecution.

Dant's claim against the District for false arrest and imprisonment has no legal merit, moreover, because there was probable cause. For purposes of deciding this part of the appeal, we treat the district court's order as a summary judgment on uncontested facts. Dant concedes that he saw the "Stop, See Attendant" sign but nonetheless walked away. Appellee Lawrence then detained Dant and asked him, in essence, whether he had not just violated D.C.Code § 44–224 (1981) (fare evasion). Dant did not respond credibly. There was a sufficient basis in these circumstances for Lawrence to arrest Dant. *See Dellums v. Powell,* 566 F.2d 167, 175 (D.C.Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). We therefore affirm the district court's *sua sponte* dismissal of appellant's common law claim against the District for false arrest and imprisonment.

Count four (abuse of process) alleges that "[d]efendants [sic] District of Columbia prosecuted plaintiff solely in furtherance of their ulterior motive to compel [plaintiff to sign a] civil release" of WMATA's liability. Complaint at 9. The district court dismissed this claim on the authority of *Stebbins,* and we agree. The rationale applied by the District of Columbia Court of Appeals in that case extends to Dant's common law claim for abuse of process because, like the malicious prosecution claim, this claim is a challenge to the prosecutor's decision to prosecute. As we noted

in *Briggs,* 569 F.2d at 19–20, when he acts in his capacity as advocate, a prosecutor's absolute immunity extends "so far as necessary to protect [his] decision with respect to the initiation and conduct of particular cases" (explaining *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). *Accord McGruder v. Necaise,* 733 F.2d 1146, 1148 (5th Cir.1984) (prosecutor who allegedly commenced prosecution because prisoner suffering serious burn injuries while in jail would not drop a damages suit is absolutely immune from suit under 42 U.S.C. § 1983).

### C. *Section 1983 Claims*

The District's prosecutorial immunity, and the presence of probable cause, are a complete answer to Dant's claims against it under 42 U.S.C. § 1983 (1982). *Cf. Imbler,* 424 U.S. at 431, 96 S.Ct. at 995 ("in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983"). Similarly, WMATA's sovereign immunity in the exercise of its police and discretionary functions bar all but one of Dant's claims against WMATA under section 1983. The issue left for us under section 1983 is whether on remand the district court must try Dant's section 1983 claim against WMATA for abuse of process.

Section 1983 provides in part as follows: Every person who, *under color of any statute, ordinance, regulation, custom, or usage of any State ...* subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1982) (emphasis added).

▮ The amended complaint contains the following relevant allegation:

62. By their malicious prosecution and abuse of lawfully issued process defendants District of Columbia and WMA-

TA violated plaintiff's rights under the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983.

Complaint at 11. The complaint nowhere alleges, however, that Dant was subjected to malicious prosecution and abuse of process pursuant to an established WMATA policy or practice. The complaint thus fails to allege a necessary element of a section 1983 violation, namely, that there be a deprivation of rights "under color of any statute, ordinance, regulation, custom, or usage of any State...." *Cf. Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (municipal liability under section 1983 attaches only when deprivations of right occur pursuant to policy).

We affirm the district court's dismissal of all claims under section 1983.

### III. CONCLUSION

That part of the district court's order dismissing *sua sponte* all claims against the District of Columbia is affirmed in full. The part dismissing appellant's claims against WMATA and its agent Lawrence is also affirmed, except inasmuch as it relates to appellant's claim for negligent operation and maintenance of WMATA's farecard system, and his claim against WMATA for abuse of process. We reverse as to the abuse of process and operation-and-maintenance claims, and remand them to the district court for further proceedings consistent with this opinion.

*So ordered.*