Carl W. HAWTHORNE, Plaintiff,

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**
Defendant.

Civ. A. No. 88–0359.

United States District Court,
District of Columbia.

Oct. 31, 1988.

Stephen L. Joseph, Kline & Joseph, Washington, D.C., for plaintiff.

Thomas A. Medford, Jr., Asst. Gen. Counsel, Washington Metropolitan Area Transit Authority, Washington, D.C., for defendant.

## OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Presently pending before the Court is a motion by defendant Washington Metropolitan Area Transit Authority (WMATA) to dismiss or, in the alternative, for summary judgment. Plaintiff Carl W. Hawthorne has opposed the motion. For the reasons articulated below, this action will be dismissed.

### I.

Defendant WMATA is a governmental entity established by means of a Compact entered into between the District of Columbia, Virginia and Maryland and consented to by the Congress. *See* D.C.Code § 1–2431. Among other things, WMATA is responsible for operation of the Metro, the subway system that serves the District of Columbia metropolitan area. Plaintiff Hawthorne has been employed as a Metro station attendant since 1978. On January 17, 1987, plaintiff was arrested by a Metro police office, Sergeant George Colvin, charged with stealing money from a Metro farecard vending machine at the Farragut North station, and terminated as a Metro employee. When Hawthorne applied for unemployment benefits, WMATA opposed his application but the District of Columbia's Office of Unemployment Compensation awarded him benefits. In February 1987, plaintiff was tried in the Superior Court of the District of Columbia; he was acquitted of the charges brought against him. Hawthorne filed a grievance over his termination, which resulted in an arbitra-

tion decision in his favor. Plaintiff was then reinstated to his former job with back pay and benefits.

In Counts I through VI of his complaint[1], Hawthorne alleges that his arrest and prosecution constituted false arrest and imprisonment, malicious prosecution, assault and battery, and negligence, deprived him of his constitutional rights in violation of 42 U.S.C. § 1983, and amounted to a breach of his contract of employment with WMATA. Counts V and VI also assert that WMATA violated 42 U.S.C. § 1983 and breached his employment contract by terminating him, waiting four months before reinstating him to his former position and resisting his claim for unemployment compensation. Finally, plaintiff maintains in Count VII that he was defamed by his termination, subsequent reinstatement, WMATA's opposition to his unemployment application, and statements made about his employment by WMATA employees.

### II.

With respect to the tort claims contained in Counts I through V of the complaint, WMATA argues that the doctrine of sovereign immunity absolutely shields it from liability. Its contention is based on Section 80 of the WMATA Compact, which provides in part:

> The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agents committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function.

D.C.Code § 1–2431(80). WMATA argues that the actions challenged in the first five counts of the complaint fall within this "governmental function" exemption from

---

[1] Plaintiff originally instituted this action in the Superior Court of the District of Columbia, but it was removed by WMATA to this Court on February 12, 1988. Plaintiff moved on July 11, 1988 for leave to file an amended complaint; he later withdrew that motion and filed a motion for leave to file a second amended complaint. When WMATA had no opposition to the filing of a second amended complaint, this Court granted Hawthorne's motion on July 21, 1988. Unless otherwise noted, all reference will be to the second amended complaint.

liability; Hawthorne, on the other hand, maintains that WMATA can be held liable because the acts are proprietary in nature.

■ Fortunately, our court of appeals has recently decided a trilogy of cases that shed considerable light on the opposing arguments presented by the parties. *See Dant v. District of Columbia,* 829 F.2d 69 (D.C.Cir.1987); *Sanders v. WMATA,* 819 F.2d 1151 (D.C.Cir.1987); *Morris v. WMATA,* 781 F.2d 218 (D.C.Cir.1986). At the outset, it is important to note that, because Congress granted its consent to WMATA's Compact, the question whether WMATA and its employees were acting in a governmental or proprietary capacity is one of federal law. *Morris,* 781 F.2d at 220 & n. 2. Additional wisdom culled from these cases is that liability under section 80 should be determined with reference to the discretionary/ministerial dichotomy employed in cases brought under the Federal Tort Claims Act. *See Dant,* 829 F.2d at 74; *Sanders,* 819 F.2d at 1154–55. The discretionary/ministerial distinction seeks to prevent courts from "second-guessing" in tort actions "legislative and administrative decisions grounded in social, economic, and political policy" and "the political, social, and economic judgments of an agency exercising its regulatory function." *Sanders,* 819 F.2d at 1155 (quoting *United States v. Varig Airlines,* 467 U.S. 797, 814, 820, 104 S.Ct. 2755, 2768, 81 L.Ed.2d 660 (1984)); *see also Dant,* 829 F.2d at 74. With this guidance in mind, the Court examines the specifics of the instant case.

■ Hawthorne's claims in Counts I through V must be dismissed because they arise out of the operation of WMATA's police force, a quintessentially governmental function. *See Morris,* 781 F.2d at 220 ("The principle is well-established that operation of a police force is a governmental rather than a proprietary function"). The decision in *Dant,* which involved facts strikingly similar to the instant case, is dispositive of plaintiff's claims. There, a Metro patron was arrested by a WMATA police officer who believed that the patron was attempting to exit the system without paying his required fare. After criminal proceedings were dismissed by the trial judge, the patron sued WMATA alleging false arrest and imprisonment, malicious prosecution, negligence in training WMATA officers, and deprivation of civil rights under 42 U.S.C. § 1983. These allegations —which parallel those brought by plaintiff in the instant case—were dismissed by the district court. The court of appeals affirmed. After reviewing its decision in *Morris,* it noted:

> *Morris* therefore requires that we affirm the district court's dismissal of all claims against WMATA relating to WMATA's police functions, including the claim under count three of negligent training of WMATA police officers. Our reasoning in *Morris* also requires dismissal of the malicious prosecution claim. The reports forming the basis for the criminal charge the District brought against Dant were prepared by [WMATA Officer] Lawrence in the discharge of his duties as a policeman. Similarly, swearing to a criminal complaint is an integral part of the police function and, therefore, is clearly "governmental."

829 F.2d at 74. By the same token, Hawthorne's allegations of false arrest and imprisonment, malicious prosecution, assault and battery, negligence and deprivation of constitutional rights—all of which are generated from the operation of WMATA's police force—are immune from tort liability because they relate to a governmental function.

■ Count VI, which alleges that plaintiff's termination and subsequent reinstatement breached his employment contract, must also be dismissed. It is clear that such a "labor dispute" must be presented to final and binding arbitration under section 66(c) of the Compact. *Sanders,* 819 F.2d at 1156. Here, plaintiff has not alleged, in his complaint or his pleadings, that he has complied with this requirement. Dismissal is therefore warranted because "WMATA employees who fail to exhaust the grievance and arbitration proceedings, available to them, may not seek redress in court on claims that could and should have been grieved." *Id.* at 1158.

Finally, plaintiff's allegation of defamation contained in count VII also fails. Several grounds are advanced for this claim. First, Hawthorne asserts that several untrue statements were made by WMATA employees before the District of Columbia's Office of Unemployment Compensation. Because they were made during the course of quasi-judicial proceedings, however, these remarks are absolutely privileged. *See, e.g., Mazanderan v. McGranery,* 490 A.2d 180 (D.C.1984). Plaintiff also claims that WMATA's failure to reinstate him for four months after his acquittal constitutes "an untrue representation to plaintiff's coworkers that plaintiff had broken into and entered the farecard machine and was taking cash therefrom." Complaint ¶ 52. Even assuming that this claim is actionable as defamation, it clearly relates to a discretionary decision on the part of WMATA officials about which "second-guessing" is not permitted; sovereign immunity thus attaches to bar any liability on the part of WMATA. Finally, in paragraph 50 of the complaint plaintiff alleges that false statements were made about him by WMATA employees to other WMATA workers. A prerequisite for imposing liability for defamation against WMATA, as with any other tort, is that the actions complained of occur during the scope of the employee's official duties. Hawthorne has made no such allegations in the instant case, and his defamation claim will therefore be dismissed.

### III.

For these reasons, it is

ORDERED that WMATA's motion to dismiss is granted, and this action be and it hereby is dismissed.