Jeffrey WARREN, Sr., Plaintiff,

v.

## WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.

### Civ. A. No. 93–1609 PLF.

United States District Court,
District of Columbia.

Feb. 28, 1995.

Adrian R. Prince, Washington, DC, for plaintiff.

David R. Keyser, Washington, DC, for defendant.

*OPINION*

FRIEDMAN, District Judge.

Jeffrey Warren, Sr., was a passenger on a bus operated by the Washington Metropolitan Area Transit Authority ("WMATA") when the window beside him shattered and he was injured by flying glass. The window was damaged by the impact of an unknown object from outside of the bus. Mr. Warren filed this personal injury action against WMATA in the Superior Court of the District of Columbia, alleging that the glass that shattered did not meet safety regulations applicable to WMATA vehicles and that defendant's negligence and recklessness in "allowing the operation of [the bus] without properly glazed or safety glass in the passenger windows" was a cause for Mr. Warren's injuries. Complaint ¶¶ 6, 7, 8. WMATA removed the case to this Court, which has original jurisdiction under the WMATA Compact.

Defendant moved for judgment on the pleadings pursuant to Rule 12(c), Fed. R.Civ.P. Plaintiff opposed this motion. After hearing argument the Court determined that defendant's motion should be treated as a motion for summary judgment because defendant relies on matters outside the pleadings. At plaintiff's request, the Court extended the period for discovery and permitted counsel for both parties to submit additional affidavits and documentary evidence pertinent to the converted summary judgment motion. Plaintiff supplemented his opposition.

## I. SUMMARY JUDGMENT STANDARD

Under Rule 56, Fed.R.Civ.P., summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513; *see also Washington Post Co. v. U.S. Dep't of Health and Human Services*, 865 F.2d 320, 325 (D.C.Cir.1989). But the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987). If

the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. at 2511.

Defendant asserts that WMATA is shielded by sovereign immunity from liability for governmental acts, such as those alleged by plaintiff. Plaintiff counters that there is a genuine dispute of material fact as to whether WMATA installed glass that failed to meet mandatory safety standards and that WMATA does not have the discretion to choose to disregard those standards in making its design decisions.

## II. SOVEREIGN IMMUNITY

■ WMATA contends that it is entitled to summary judgment because choosing glass to be used in bus windows is a governmental function and, by the terms of the interstate compact creating it, WMATA may not be held liable for "any torts occurring in the performance of governmental functions." D.C.Code § 1–2431(80); *see Hess v. Port Authority Trans–Hudson Corp.,* — U.S. —, —, 115 S.Ct. 394, 405, 130 L.Ed.2d 245 (1994) (citing *Morris v. Washington Metro. Area Transit Authority,* 781 F.2d 218 (D.C.Cir.1986)). Sovereign immunity for torts occurring in the performance of governmental functions protects WMATA from "judicial 'second guessing' via tort suits 'of legislative and administrative decisions grounded in social, economic and political policy.'" *Sanders v. Washington Metro. Area Transit Authority,* 819 F.2d 1151, 1155 (D.C.Cir. 1987) (quoting *United States v. Varig Airlines,* 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984)). WMATA concedes that it does not have immunity for torts arising from "the conduct of any proprietary function, in accordance with the law of the applicable signatory...." D.C.Code § 1–2431(80).[1]

■ The distinction between protected and unprotected conduct turns on whether it involves governmental or discretionary activity, on the one hand, or proprietary or minis-

terial activity, on the other. "Only the former type of action, a policy decision, is a 'discretionary function' which should be immune from second guessing...." *McKethean v. Washington Metro. Area Transit Authority,* 588 A.2d 708, 713 (D.C.1991). As the District of Columbia Circuit recently explained, "[w]hat matters is not what the decisionmaker was thinking, but whether the type of decision being challenged is grounded in social, economic, or political policy." *Cope v. Scott,* 45 F.3d 445, 449 (D.C.Cir.1995). Daily management decisions may be protected if they are grounded in social, economic or political goals, while the exercise of poor judgment in the conduct of ordinary tasks may not be. *See Cope v. Scott,* 45 F.3d at 448.

Although WMATA's provision of mass transit is generally considered a proprietary function that would not be protected by sovereign immunity, *Oasim v. Washington Metro. Area Transit Authority,* 455 A.2d 904, 906 (D.C.), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983), WMATA contends that plaintiff is challenging a design and planning choice and that such a policy choice is a protected governmental or discretionary function. Defendant asserts that the design of a WMATA bus, including the choice of glass to be installed on the bus, involves evaluating various types of glass with distinct qualities that are responsive to different safety and design concerns and choosing among many glazing options. In selecting glass for its buses, WMATA says it must also consider current and projected bus purchase budgets in conjunction with the demand for bus services and the impact of cost on future revenue needs. Def. Reply, Cowger Aff. ¶¶ 5, 6. WMATA maintains, therefore, that such decisions involve political, economic and social policy determinations that are cloaked by the protective mantle of sovereign immunity.

■ Under established case law WMATA is correct that such design decisions are protected by sovereign immunity. *See, e.g., Dant v. District of Columbia, et al.,* 829 F.2d 69, 73 (D.C.Cir.1987) (WMATA immune from

---

1. Federal law governs whether a function is shielded by governmental immunity or suscepti-

ble to suit because it is a proprietary function. *Sanders v. WMATA,* 819 F.2d at 1154.

claims for negligent design of fare collection system); *Simpson v. Washington Metro. Area Transit Authority,* 688 F.Supp. 765, 767 (D.D.C.1988) (WMATA immune from suit challenging design decision regarding the size of the gap between platform and subway train); *Nathan v. Washington Metro. Area Transit Authority,* 653 F.Supp. 247, 248 (D.D.C.1986) (WMATA immune from suit regarding planning decisions concerning design, location, and construction of stairwell at Metro station); *McKethean v. Washington Metro. Area Transit Authority,* 588 A.2d at 716 (1991) (design and placement of bus stop are governmental functions immune from tort liability).

Plaintiff argues that while a policy decision respecting design may be cloaked by sovereign immunity, the negligent implementation of such a policy decision is subject to challenge. He cites *Gillot v. Washington Metro. Area Transit Authority,* 507 F.Supp. 454 (D.D.C.1981) (challenge to security procedures employed by WMATA as operator of parking lot are not barred by governmental immunity), *Dant v. District of Columbia, et al.,* 829 F.2d at 75 (claim can be maintained for faulty operation and maintenance of farecard system), and *Washington Metro. Area Transit Authority v. O'Neill,* 633 A.2d 834, 838–39 (D.C.1993) (driver's failure to follow WMATA safety directives is actionable negligence). Plaintiff contends that WMATA negligently failed to install glass that conformed with District of Columbia Municipal Regulations or American National Standard Institute (ANSI) requirements for safety glass for installation on buses. He maintains that such negligent failure is not protected by sovereign immunity.

Defendant acknowledges that "governmental immunity ... does not shield a governmental entity that makes decisions in violation of a statute, law, or regulation ...," Def. Reply at 1, and that if a statute or regulation prescribes a particular course of action, then WMATA has no discretion and the sole question is whether WMATA did or did not follow the directive. *See Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) (discretionary exception does not apply when suit charges agency

with failing to act in accord with specific mandatory directives); *Chvala v. D.C. Transit System, Inc.,* 306 F.2d 778 (D.C.Cir.1962) (streetcar company would be liable for negligence in failing to comply with statutory duty to maintain, mark and light streetcar loading platforms). WMATA argues, however, that because it was free to choose among several designs, each of which complied with applicable federal and local laws and regulations concerning safety glass for buses, it had discretion which it exercised properly.

At the time Mr. Warren was injured, the District of Columbia's administrative regulations required that all motor vehicles operating in the District be "equipped throughout with safety glazing materials...." 18 D.C.M.R. § 734.1. Plaintiff contends that these requirements are mandatory because vehicles not meeting the requirement may not be registered and operated within the District. 18 D.C.M.R. §§ 734.1, 734.3. In addition, plaintiff relies on ANSI Code No. Z26.1A–1969 which provides a safety code for safety glazing materials used in windows in motor vehicles. Pl.Supp. I, Ex. 2. While the preface to the ANSI standard for safety glazing materials for glazing motor vehicles states that "the use of American National Standards is completely voluntary," Pl.Supp. II, Ex. 6, ANSI provides at least a useful guide for this analysis. Finally, WMATA's contract specifications for the type of bus on which Mr. Warren was riding indicate that all side window glazing material shall be $\frac{7}{32}$ inch laminated safety glass. Pl.Supp. I, Ex. 4. These contract guidelines do not have the force or effect of a statute or administrative regulation, *see Wanzer v. District of Columbia,* 580 A.2d 127, 133 (D.C.1990), but they are also instructive on how WMATA implemented what it perceived to be its obligations.

No fragments of the glass that injured Mr. Warren have been preserved. The evidence in the record indicates that it could have been either laminated or bullet-resistant safety glass; that the glass could have been either $\frac{1}{4}$ inch or $\frac{7}{32}$ inch thick; and that it could have been one of three qualities of glass (AS–1, AS–2 or AS–3). The delivery specifications for the bus in which Mr. War-

ren was injured indicate that the bus originally was outfitted with ¼ inch laminated AS–3 glass. Pl.Supp. II, Ex. 1. Seventeen windows on the bus had been replaced prior to Mr. Warren's injury, however, so, as plaintiff notes, there is a *possibility* that the broken window was not the original ¼ inch laminated glass. While WMATA cannot know what type of glass actually was in the bus window that shattered on plaintiff, it has explained under oath that replacement windows were ⁷⁄₃₂ inch bullet-proof glass. Supp. Response to Dep. Question 3 (Cowger).[2]

Plaintiff disputes that the shattered glass was laminated or bullet-proof because an unidentified ambulance attendant at the scene when Mr. Warren was injured identified the glass as plexiglass, a type of glass that is not approved by ANSI for use in buses. The ambulance attendant's observation was recorded by a registered nurse on a Washington Hospital Center Emergency Department Triage Record. Pl.Statem. of Mat. Facts., Ex. 1. Rule 56(e), Fed.R.Civ.P., specifies that the party opposing summary judgment must support his opposition by affidavits, depositions, answers to interrogatories or admissions setting forth specific facts showing that there is a genuine dispute for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553. Plaintiff has not provided a deposition or affidavit from the ambulance attendant, the registered nurse or anyone else with knowledge of what kind of glass was in the window at the time it shattered. Plaintiff's evidence really amounts to little more than speculation or conjecture and is not sufficient to counter defendant's sworn deposition statements regarding the type of glass in the window of the bus.

The affidavit of Victor J. Woodward, the operations manager at a glass company, also offered by plaintiff, is more substantial, but does not change the result. Mr. Woodward states that the "fact that the glass involved in the accident [broke] into many little pieces is more consistent with non-laminated safety glass reaction to striking, rather than laminated which breaks but does not shatter into little pieces." Woodward Aff. ¶ 6. While the Court must draw all justifiable inferences in plaintiff's favor on this motion for summary judgment, a determination that non-laminated bullet proof glass shattered and injured Mr. Warren, rather than laminated glass, is only material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510.

Here, it is immaterial whether laminated or non-laminated bullet-proof glass was installed on the bus, either initially or when windows were replaced, because there is no evidence that either one of them does not conform to District of Columbia Municipal Regulations or to the ANSI standards. While ANSI Standard Z26.1 does indicate that the tests for safety glazing materials for *windshields* currently can be met only by laminated safety glass, there is no such similar finding by ANSI for glass used elsewhere in the bus. Pl.Supp. I, Ex. 2. Plaintiff also argues that there exists a genuine issue of material fact as to whether defendant acted negligently in originally installing AS–3 quality glass in the bus rather than AS–1 quality glass. Pl.Supp. II, Mem. at 3. Plaintiff's own evidence, however, establishes that ANSI approved of AS–3 glass, so long as it was not used in the windshield or adjoining windows where the bus driver's visibility is a priority. Pl.Supp. II, Ex. 4. In this case, the window that shattered was a side window located near the rear of the bus and was not a windshield. Resp. to Dep. Questions 7, 8. The Court, therefore, finds that the use of either laminated AS–3 glass or non-laminat-

---

2. Earlier WMATA had said that the bus was outfitted with "tempered glass," Def.Reply, Cowger Aff. ¶ 4, and ⁷⁄₃₂ inch laminated glass. Resp. to Dep. Question 3 (Spivey). WMATA subsequently supplemented its sworn testimony to explain that the original bus windows were ¼ inch laminated glass and replacement windows were ⁷⁄₃₂ bullet-proof glass. Resp. to Dep. Question 3 (Cowger). ANSI Safety Code Z26.1 defines laminated glass as two or more pieces of glass bound together by intervening layers of plastic material. When broken, the glass tends to adhere to the plastic layer. Tempered glass is a single piece of specially treated glass possessing higher mechanical strength than annealed glass. Bullet-resistant glass consists of one or more layers of glass bonded together with one or more layers of plastic material that can meet ANSI bullet-resisting requirements. Pl.Supp. II, Ex. 6.

ed bullet-proof AS–3 glass in a side window does not violate ANSI requirements and that plaintiff has not raised a genuine issue of *material* fact.

In the end, plaintiff's argument seems to be that defendant should have chosen a more shatter-resistant glass than was installed in the WMATA bus either originally or when the windows were replaced, apparently because WMATA was aware or should have been aware of the risk of this type of incident occurring. Plaintiff's argument directly challenges WMATA's design decision. The choice of one type of glass that conforms to applicable standards over another type of glass that conforms to applicable standards is a design decision that is a governmental function protected by sovereign immunity.

### III. NEGLIGENT MAINTENANCE

■ Plaintiff's complaint does not articulate a claim for negligent operation and maintenance of the bus on which Mr. Warren was injured. At the time of the hearing and in subsequent filings related to this summary judgment motion, however, plaintiff introduced arguments that may pertain to a negligent operation and maintenance claim. Operation and maintenance involve ministerial rather than discretionary responsibilities and therefore are not shielded by sovereign immunity. *Dant v. District of Columbia, et al.,* 829 F.2d at 75. Thus, in fairness to plaintiff, and to ensure that the Court has not misread his allegations, the Court will address the negligent maintenance and operation arguments.

■ Plaintiff argues that there is a genuine dispute "as to whether it was negligence for the defendant's employees to use ⁷⁄₃₂ inch glass material as replacement glass when the glass provided with the bus was ¼ inch." Pl.Supp. II, Mem. at 4. The affidavit of Victor J. Woodward states that Mr. Woodward is "of the opinion that the replacement of ¼ inch safety glass in a bus with ⁷⁄₃₂ inch glass is *improper based upon original manufacturer standards.*" Woodward Aff. ¶ 5 (emphasis added). Mr. Woodward's statement does not suggest that the use of ⁷⁄₃₂ inch replacement glass was inappropriate in a bus, inconsistent with industry standards or

incompatible with the design of the bus, but merely that it was not the same as the thicker glass that was originally installed in the bus. This is not evidence of negligent maintenance. Nor is there any evidence that replacement with ¼ inch glass would have prevented the glass from shattering when it was struck by an object from outside the bus.

As noted, the use of ⁷⁄₃₂ inch replacement glass was in fact consistent with WMATA's contract specifications for the type of bus on which Mr. Warren was injured, Pl.Supp. I, Ex. 4, and the evidence in the record demonstrates that the design specifications adopted by WMATA were in conformity with ANSI and District of Columbia glazing standards. WMATA's choice of replacement glass implicates " 'not negligence but social wisdom, not due care but political practicability, not reasonableness but economic expediency.' " *Cope v. Scott,* 45 F.3d at 450 (quoting *Sami v. United States,* 617 F.2d 755, 766 (D.C.Cir. 1979)). WMATA's decision to use ⁷⁄₃₂ inch glass to replace broken windows on its bus is a protected policy decision. Plaintiff's evidence does not justify the inference that WMATA was negligent in the maintenance or operation of the bus on which Mr. Warren was riding when injured.

### III. CONCLUSION

Upon consideration of defendant's motion for summary judgment, plaintiff's response thereto, defendant's reply, and plaintiff's supplemental response, the deposition responses and affidavits submitted, the entire record in this case, and the arguments of counsel presented in open court, and for the reasons stated above, the Court grants defendant's motion. A Judgment consistent with this Opinion is issued this same day.

SO ORDERED.

### JUDGMENT

For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that Defendants' converted summary judgment motion is GRANTED; it is

FURTHER ORDERED that JUDG-MENT is entered in favor of Defendant Washington Metropolitan Area Transit Authority; and it is

FURTHER ORDERED that this case is dismissed from the docket of the Court.

SO ORDERED.