David Monro **SOUDERS; Margaret Hopkins Plank; Edmund Allison Rennolds, III; Dorothy Joan Warren; Webb L. Smedley; Angela Cauli Smedley, Appellants**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellee.**

No. 93–7243.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 6, 1995.

Decided March 3, 1995.

---

Neil D. Intrater, Silver Spring, MD, argued the cause and filed the briefs for appellants.

Gerard J. Stief, Associate Gen. Counsel, Washington Metropolitan Area Transit Authority, Washington, DC, argued the cause and filed the brief for appellee. With him on the brief were Robert L. Polk, Gen. Counsel, and Robert J. Kniaz, Deputy Gen. Counsel, Washington Metropolitan Area Transit Authority, Washington, DC.

Before WALD, SILBERMAN, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Appellants are three married couples who own homes near a section of Washington Metropolitan Area Transit Authority ("WMATA") track in Silver Spring, Maryland. They appeal a district court judgment dismissing their noise nuisance suit against WMATA on the ground of sovereign immunity. We affirm.

## I. BACKGROUND

In September 1990, WMATA extended its red line service to include surface track passing close to appellants' homes in Silver Spring. In June 1992, appellants initiated an action against WMATA in the Superior Court of the District of Columbia, alleging that noise from passing Metrorail trains con-

stituted a nuisance. WMATA timely removed the case to the United States District Court for the District of Columbia.

Appellants' argument to the district court emphasized the undisputed fact that noise generated by WMATA's trains regularly exceeds the 55 decibel[1] maximum level permitted by the noise pollution law of Montgomery County, Maryland. *See* MONTGOMERY COUNTY VA. CODE § 31B–5(b)(1)(b). Experts on both sides measured sound levels from 62 to 73 dBA on appellants' property. Appellants' expert also obtained a measurement of 81 dBA at a point along WMATA's property line, some distance from appellants' grounds. Appellants contended that these decibel levels constituted evidence of a nuisance.

Appellants also argued that faulty welds in WMATA's tracks resulted in "clacking" sounds louder and more annoying than ordinary train noise. They sought compensatory and injunctive relief, including replacement tracks and construction of a sound wall to insulate their property. WMATA has since replaced the tracks in question, but has declined to build a sound wall.

WMATA claimed that sovereign immunity barred appellants' suit. WMATA is an instrumentality of Maryland, Virginia, and the District of Columbia created by interstate compact,[2] which enjoys sovereign immunity except where it has consented to suit. The WMATA Compact provides a limited waiver of sovereign immunity for torts committed "in the conduct of any proprietary function," but preserves immunity for torts "occurring in the performance of a governmental function." *See* D.C.CODE ANN. § 1–2431(80) (1981). WMATA argued to the district court that it had not built a sound wall in this case because the sound levels at appellants' property were within WMATA's own sound level guidelines, which permit readings up to 75

dBA on appellants' property. WMATA claimed that the alleged tort thus resulted from its exercise of a "governmental function"—the design of sound level guidelines for the Metrorail system. Therefore, WMATA concluded, § 80 of the Compact preserves its sovereign immunity in this case.

In an oral decision pronounced on July 9, 1993, the district court agreed with WMATA's sovereign immunity argument and entered summary judgment in its favor. In November 1993, the court denied appellants' motion for reconsideration. They then filed a timely notice of appeal.

## II. ANALYSIS

### A. *Sovereign Immunity*

■ In *Morris v. Washington Metropolitan Area Transit Authority*, 781 F.2d 218, 222–28 (D.C.Cir.1986), we held that WMATA partakes of the state sovereign immunity conferred by the eleventh amendment upon Virginia and Maryland.[3] The nub of the present appeal is whether § 80 of the Compact confers eleventh amendment immunity to a nuisance suit for challenged noise levels that fall within WMATA's adopted guideline policy for the Metrorail system.

Section 80 provides, in pertinent part:

[WMATA] shall be liable for its . . . torts [committed] . . . in the conduct of any proprietary function . . . but shall not be liable for any torts occurring in the performance of a governmental function.

D.C.CODE ANN. § 1–2431(80). We have already held that "given the state of our society" it is infeasible to distinguish in every case between public sector ["governmental"] and private sector ["proprietary"] functions. *Dant v. District of Columbia*, 829 F.2d 69, 74 (D.C.Cir.1987). We have therefore interpret-

---

1. A "decibel" or "dBA" is a unit for measuring sound levels, approximately equal to the smallest difference in loudness detectable by the human ear. The range runs from 1 dBA, the faintest audible sound, to 130 dBA.

2. On November 6, 1966, Congress consented to, and enacted for the District of Columbia, the WMATA Compact. *See* Washington Metropolitan Area Transit Authority Compact, Pub.L. No. 89–774, 80 Stat. 1324 (1966) ("WMATA Com-

pact"). The Compact created WMATA to operate a mass transit system for the District of Columbia and the surrounding suburban areas. The Compact is codified at D.C.CODE ANN. § 1–2431 and MD.TRANSP.CODE ANN. § 10–204.

3. The *Morris* court declined to decide whether WMATA benefits separately from immunity conferred by Congress; we find it unnecessary to reach that question here as well.

ed "governmental functions" to include those acts that are "discretionary," as opposed to those that are purely "ministerial." *Id.*

*Dant* also established that the critical inquiry in determining whether a challenged WMATA action is "discretionary" is whether the action expresses the "political, social, and economic judgments" of the agency. *Id.*; *see also Berkovitz v. United States*, 486 U.S. 531, 537, 108 S.Ct. 1954, 1959, 100 L.Ed.2d 531 (1988) (enunciating this same test for deciding whether an action falls within the "discretionary function" of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a) (1988)). If so, we presume that Congress intended to make the WMATA action immune "from courts second-guessing [its decision] through private tort suits." *Dant*, 829 F.2d at 74 (internal quotations and citations omitted).

On its face, certainly WMATA's development of noise level guidelines for the Metrorail system would appear to be grounded in "political, social, and economic judgments." Appellants nonetheless offer two objections that merit attention.

First, appellants argue that WMATA has not in fact developed its own noise guidelines. They claim that the noise level limits cited by WMATA are those of "a trade association which represents and lobbies on behalf of the private railroad industry." The record does not support this contention. Rather, it reveals that WMATA hired two engineering and consulting firms to aid in developing noise control measures, both of which conducted considerable original research on behalf of WMATA. These efforts culminated in WMATA's "Washington Metropolitan Area Transit Authority Noise and Vibration Control Program," ("Program") which itself appears in the record. The Program includes extensive discussion of WMATA's goals and methods of controlling noise, as well as the specific dBA limits for different types of neighborhoods upon which WMATA relies.[4]

The record also contains an affidavit from WMATA's expert—the president of one of the consulting agencies retained by WMATA in developing its guidelines—stating that WMATA does follow the noise criteria contained in its Program. Indeed, appellants do not dispute that WMATA has consistently utilized the Program's guidelines in building the Metrorail system. Appellants' argument thus appears to reduce to the objection that WMATA never held public hearings or formal proceedings, nor made any official comments, to "adopt" the Program. We note, however, that the WMATA Compact imposes no obligation upon WMATA to conduct formal proceedings in order to adopt particular design criteria. We therefore find that where WMATA has consistently held the Program out as embodying its noise level guidelines and has actually followed the Program's limits, it would be unduly formalistic to require WMATA to hold an official proceeding before it may be considered to have adopted the Program in the exercise of its governmental discretion.

■ In a somewhat similar vein, appellants also contend that conferring immunity on WMATA because it has developed noise control criteria would somehow permit WMATA to "create" immunity not intended by Congress. This objection is puzzling, as it runs headlong into the essential logic of the discretionary function exception to governmental liability. By insulating from liability decisions involving the balancing of "social, political, and economic" factors—whether under the WMATA Compact, the FTCA, or elsewhere—Congress presumably *did* intend to allow government to "create" immunity by carefully considering a question in policy terms. It is true, as appellants argue, that such immunity could have substantial and even on occasion undesirable impact if those policies are ill-considered. But the hard fact remains that insulating policy determinations, good and bad, is the *raison d'etre* of the discretionary function exception.

---

**4.** WMATA's sound level limits closely parallel those adopted by the United States Department of Transportation, which appear in the DOT's HANDBOOK OF URBAN RAIL NOISE AND VIBRATION CONTROL B–18 (1982). WMATA's noise ceiling for an "average urban residential" neighborhood, such as appellants', is 75 dBA. The DOT provides a 75 dBA maximum limit for "average residential" neighborhoods.

We note that accepting appellants' argument would, in this very case, create a conundrum of its own. Appellants claim, in essence, that whether particular noise levels generated by WMATA's trains rise to the level of a nuisance is in each instance a question for jury determination. WMATA would thus be subject to the different noise ceilings applicable in different localities; indeed, different juries within the same area might find that a particular noise level is a nuisance in one case but is not in another. Such diversity of acceptable noise levels would clearly impose an undue burden on WMATA—one, we feel certain, not intended by the Compact's signatories.

## B. *The Nuisance Exception*

■ Appellants argue that even if WMATA would otherwise benefit from sovereign immunity under these circumstances, the doctrine does not apply in nuisance suits. This claim represents a misunderstanding of the law of immunity.

Appellants cite a number of cases that stand for the proposition that a municipal corporation may not, in many states, assert immunity in a nuisance action. *See, e.g., Herilla v. Mayor & City Council of Baltimore,* 37 Md.App. 481, 378 A.2d 162 (1977). But WMATA of course is not a municipal corporation; as we explain *supra* at 4, WMATA shares the eleventh amendment immunity of both states, Maryland and Virginia. The Maryland Court of Appeals has recently explained the difference between municipal and state sovereign immunity:

> [T]he doctrine of sovereign or governmental immunity generally protects the State of Maryland from suit unless the immunity has been waived.... Counties and municipalities, on the other hand, have not been accorded this broad immunity from suit.... [Indeed], counties and municipalities have [ ] been granted [no] immunity in

contract actions.... [and in] tort actions, [their] liability is limited. As previously noted, [municipal liability] is inapplicable to nuisance actions.

*Board of Education of Prince George's County v. Mayor and Common Council of the Town of Riverdale,* 320 Md. 384, 578 A.2d 207 (1990). Because WMATA benefits from the state-level immunity of Maryland and Virginia, appellants' claim that WMATA cannot assert immunity in nuisance suits is incorrect.

## C. Beatty v. WMATA

Appellants next raise *Beatty v. Washington Metropolitan Area Transit Authority,* 860 F.2d 1117 (D.C.Cir.1988), as compelling a decision in their favor. We, on the other hand, find *Beatty* inapposite. In *Beatty,* the plaintiff had alleged that WMATA's design called for iron beams to be placed on both sides of the tracks near her home to damp vibrations; she claimed that WMATA had "forgotten to put them on the east side of the tracks." *Id.* at 1127. We observed that WMATA "h[ad] not sought to refute the claim" that its design required such beams, and therefore reversed the district court's grant of summary judgment in favor of WMATA because a genuine issue of fact existed as to whether the alleged nuisance resulted from a governmental ("design") or proprietary ("implementation") function.

■ In contrast, appellants here do not object that WMATA has failed properly to implement its design. The Noise and Vibration Control Program demonstrates that WMATA's design does not contemplate corrective action until sound levels exceed 75 dBA in "average urban residential" areas such as that in which appellants reside.[5] Because the highest level recorded on appellants' property by either expert was 73 dBA, we find that WMATA's design was appropriately implemented in this case.

Appellants' failure to present this argument at the district court level is dispositive. The general rule in this circuit is that "arguments not made below are deemed waived, and absent exceptional circumstances" are not presented on appeal. *Marymount Hospital v. Shalala,* 19 F.3d 658, 663 (D.C.Cir.1994).

**5.** Appellants contest for the first time on appeal WMATA's classification of their neighborhood as "average urban residential." They claim that even under WMATA's own Vibration and Noise Control Program, the proper noise limit in this case is the 70 dBA maximum that applies to "quiet residential" areas, rather than the 75 dBA ceiling that WMATA selected.

## D. *The 81 dBA Reading*

■ Finally, appellants claim that even if we find that WMATA's 75 dBA design standard immunizes it from suit for levels beneath that ceiling, it should be liable here because appellants obtained at least one measurement of 81 dBA. Appellants point out that they included the 81 dBA figure in their opposition to WMATA's motion for summary judgment, and argue that a trial is necessary if WMATA disputes the figure.

WMATA responds that the 81 dBA figure is irrelevant for two reasons. First, WMATA observes that the sound level was not procured as directed by the guidelines: "The[ noise level] criteria are related ... in residential areas ... to the building or area being considered." It is undisputed that an abandoned avenue and an additional set of train tracks are located between appellants' property line and the point along the Metro property fence where the 81 dBA measurement was made.

Second, WMATA argues that because the 81 dBA level was not observed at any point on appellants' property, it could not possibly support a claim of nuisance. Indeed, nuisance is defined as "an interference with the interest in the private use and enjoyment *of the land,*" see, e.g., *Beatty,* 860 F.2d at 1122 (emphasis added); WMATA is therefore clearly correct that appellants cannot maintain a nuisance suit on the basis of a noise level that did not exist on their property.

## III. Conclusion

We agree with the district court that appellants' suit was barred by WMATA's sovereign immunity; the decision below is therefore

*Affirmed.*